Joethelia PALMER, Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF the CITY OF CHICAGO, a body politic and corporate, et al., Defendants-Appellees.

No. 79–1242.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 1979.

Decided Aug. 14, 1979.

Wayne B. Giampietro, Chicago, Ill., for plaintiff-appellant.

Patrick D. Halligan, Asst. Atty., Law Dept., Bd. of Ed., Chicago, Ill., for defendants-appellees.

Before PELL, SPRECHER, and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff states the issue to be whether or not a public school teacher in her classes has the right to refuse to participate in the Pledge of Allegiance, the singing of patriotic songs, and the celebration of certain national holidays when to do so is claimed to violate her religious principles. The issue is more correctly stated to be whether or not a public school teacher is free to disregard the prescribed curriculum concerning patriotic matters when to conform to the curriculum she claims would conflict with her religious principles. Plaintiff also claims her ultimate discharge denied her due process of law.

Plaintiff, a member of the Jehovah's Witnesses religion, was a probationary kindergarten teacher in the Chicago public schools. After her appointment, but prior to the commencement of classes, plaintiff informed her principal that because of her religion she would be unable to teach any subjects having to do with love of country, the flag or other patriotic matters in the prescribed curriculum. Extraordinary efforts were made to accommodate plaintiff's religious beliefs at her particular school and elsewhere in the system, but it could not reasonably be accomplished.[1]

The trial court allowed defendants' motion for summary judgment. As there is no substantive factual dispute, additional recitation of the factual details is not required. Plaintiff argues that the offended curriculum is so broad and vague as to be incomprehensible.

In *Epperson v. Arkansas,* 393 U.S. 97, 107, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), the Court held invalid as offending the First Amendment an Arkansas statute prohibiting the teaching of a particular doctrine of evolution considered contrary to the religious views of most citizens. The Court recognized, however, that the states possess an undoubted right so long as not restrictive of constitutional guarantees to pre-

---

1. Numerous faults with plaintiff's teaching were claimed by defendants, but on appeal they are not urged as justification for plaintiff's discharge.

scribe the curriculum for their public schools. Plaintiff would have us fashion for her an exception to that general curriculum rule. The issue is narrow.

Our decision in *Clark v. Holmes,* 474 F.2d 928 (7th Cir. 1972), *cert. denied,* 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973), is of some guidance. In that case the complaint about a university teacher was that he ignored the prescribed course content and engaged in unauthorized student counseling. We held that the First Amendment was not a teacher license for uncontrolled expression at variance with established curricular content. The individual teacher was found to have no constitutional prerogative to override the judgment of superiors as to the proper content for the course to be taught. In *Ahern v. Board of Education,* 456 F.2d 399 (8th Cir. 1972), the court upheld a teacher dismissal for insubordination on the basis that the Constitution bestowed no right on the teacher to disregard the valid dictates of her superiors by teaching politics in a course on economics. In *Adams v. Campbell County School District,* 511 F.2d 1242 (10th Cir. 1975), the court stated that the Board and the principal had a right to insist that a more orthodox teaching approach be used by a teacher who was found to have no unlimited authority as to the structure and content of courses.

Plaintiff relies on a cross-section of First Amendment cases, but they are of little assistance with the specific issue in this case. Plaintiff argues that the defendants are trying to determine and limit the extent of her religious freedoms. The facts do not justify that legal perspective. The issue in this case is not analogous to a case:

(a) where plaintiff is forced by statute to display on his automobile license plate a patriotic ideological motto repugnant to a follower of the Jehovah's Witnesses faith, *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); or,

(b) where the state attempts to prohibit the issuance of a professional license because of the applicant's beliefs, *Baird v. State Bar of Arizona,* 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); or,

(c) where First Amendment rights may be chilled by a governmental investigative and data gathering activity causing actual or threatened injury, *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972); or,

(d) where a person's right to the free exercise of his religion is conditioned on the surrender of his right to office, *McDaniel v. Paty,* 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978); or,

(e) where a religious sect is forced to send its children to a public school contrary to the sect's religious beliefs, *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); or,

(f) where students are being required to participate in a patriotic pledge contrary to their beliefs, *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); or,

(g) where the wearing of armbands by students in a Vietnam protest could not be prohibited where it did not interfere with school activities or impinge upon the rights of others, *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

Plaintiff also cites *Russo v. Central School District No. 1,* 469 F.2d 623 (2d Cir. 1972), *cert. denied,* 411 U.S. 932, 93 S.Ct. 1899, 36 L.Ed.2d 391 (1973), as squarely considering the present issue, but it does not. The court held that a high school art teacher could not be dismissed for her silent refusal to participate in her school's daily flag ceremonies. She would only stand silently and respectfully at attention while the senior instructor led the program. Her job was not to teach patriotic matters to children, but to teach art. The court carefully indicated that through its holding it did not mean to limit the traditionally broad discretion that has always rested with local school authorities to prescribe curriculum.

The curriculum which plaintiff complains about is not spelled out in specific detail,

but can be found in the Board of Education policy and the directives of plaintiff's principal and superiors. There is after all nothing innovative or unique in this phase of the curriculum. It is traditional. There was no misunderstanding about what was expected to be taught.

Plaintiff in seeking to conduct herself in accordance with her religious beliefs neglects to consider the impact on her students who are not members of her faith. Because of her religious beliefs, plaintiff would deprive her students of an elementary knowledge and appreciation of our national heritage. She considers it to be promoting idolatry, it was explained during oral argument, to teach, for instance, about President Lincoln and why we observe his birthday. However, it would apparently not offend her religious views to teach about some of our past leaders less proudly regarded. There would only be provided a distorted and unbalanced view of our country's history. Parents have a vital interest in what their children are taught. Their representatives have in general prescribed a curriculum. There is a compelling state interest in the choice and adherence to a suitable curriculum for the benefit of our young citizens and society. It cannot be left to individual teachers to teach what they please. Plaintiff's right to her own religious views and practices remains unfettered, but she has no constitutional right to require others to submit to her views and to forego a portion of their education they would otherwise be entitled to enjoy. In this unsettled world, although we hope it will not come to pass, some of the students may be called upon in some way to defend and protect our democratic system and Constitutional rights, including plaintiff's religious freedom. That will demand a bit of patriotism.

There remains the plaintiff's claim that plaintiff's right to due process was violated by her discharge. It is conceded that as an untenured teacher plaintiff had no property interest in the teaching position. It is plaintiff's claim that her right to freedom of religion is a liberty interest which can only be extinguished by due process. Due process, it is argued, required that plaintiff be afforded an adversary hearing prior to dismissal. The statement of this issue is likewise contorted. Plaintiff's religious freedom is not being extinguished. The Fourteenth Amendment does not create a protected interest, but if one is found to exist by reason of some independent source, the Fourteenth Amendment protects it. No state statute or other rule or policy creates a protected interest for an untenured teacher in those circumstances. There is no claim that plaintiff has suffered a stigma by reason of her discharge. She should not and she has not. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Colaizzi v. Walker*, 542 F.2d 969 (7th Cir. 1976), *cert. denied*, 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977).

We affirm the grant of summary judgment by the district court.

AFFIRMED.