**William E. HUGHES, Plaintiff,**

v.

**Alan S. WHITMER, Defendant.**

**No. 81–4230–CV–C–5.**

United States District Court,
W. D. Missouri, C. D.

Feb. 11, 1982.

Alex Bartlett, Bartlett & Venters, P.C., Jefferson City, Mo., for plaintiff.

Preston Dean, Asst. Atty. Gen., Jefferson City, Mo., for defendant.

MEMORANDUM AND ORDER

SCOTT O. WRIGHT, District Judge.

The plaintiff, a member of the Missouri State Highway Patrol, brings this action

against the defendant, the Superintendent of the Missouri State Highway Patrol, seeking injunctive relief against alleged violations of his constitutional and civil rights. In particular, the plaintiff alleges that his transfer from one state highway patrol troop to another troop by order of the defendant violated his First and Fourteenth Amendment rights and rights guaranteed under Sections 1983, 1985, 1986 and 1988 of Title 42 of the United States Code.

At the conclusion of a two-day bench trial, the Court entered its order preliminarily enjoining the defendant from transferring the plaintiff to another troop. The parties agreed that the evidence submitted at the preliminary injunction hearing would constitute the basis for any permanent relief. On review of the evidence and the briefs submitted, the Court permanently enjoins the defendant from issuing his October 16, 1981 order transferring the plaintiff from Troop G to Troop C of the Missouri State Highway Patrol.

## I. FINDINGS OF FACT

1. Plaintiff Hughes is a citizen of Missouri and the United States, and is an employee of the Missouri State Highway Patrol.

2. Prior to October 16, 1981, plaintiff was assigned to Troop G of the Patrol. Troop G is headquartered in Willow Springs, Missouri. Plaintiff had been assigned to Troop G for the past eight years.

3. Defendant Whitmer is the appointed Superintendent of the Missouri State Highway Patrol and exercises the powers of that position under the provisions of Missouri law. Section 43.120 et seq., RSMo (1978).

4. Plaintiff and his family own a home in Willow Springs. The home is subject to a mortgage which was secured at a favorable interest rate. Plaintiff's wife is engaged in a real estate business in Willow Springs.

5. Plaintiff is respected by the Willow Springs community, is regarded as a "good trooper" by his peers, is a dedicated patrolman and enforces the law evenhandedly.

6. On October 16, 1981, the plaintiff was summoned to a meeting at Troop Headquarters. After receipt of the summons, the plaintiff contacted his attorney. His attorney was not permitted to accompany him at the meeting. The plaintiff met with Captain McKee and Major Hoffman at Troop Headquarters in Willow Springs. The plaintiff was told that he was being permanently transferred to Troop C and that he should report to Troop C on October 19. McKee and Hoffman acted in accordance with orders which they had received from the defendant.

7. Plaintiff reported to Troop C on Monday morning, October 19, 1981. Troop C is located in Kirkwood, Missouri. Unlike Willow Springs, Kirkwood is located in an urban environment and is not favorably regarded by rural patrol persons. After reporting to Troop C, plaintiff requested and was granted two weeks of accrued vacation leave.

8. A written transfer order was issued on October 19, 1981. The order stated no reason for the transfer. No written reasons for the transfer have ever been received by the plaintiff.

9. On October 19, 1981, another trooper was transferred from Troop C to Troop G. This trooper, a former resident of Willow Springs who had been previously transferred out of Troop G because of personal problems, was consulted about the transfer and was given until November 1, 1981 to prepare for it.

10. Plaintiff was not transferred in order to remedy an imbalance in Troop C or because he possessed any peculiar skills needed at Troop C.

11. A rapid, non-voluntary transfer of a trooper for reasons other than for promotion or on request of the trooper is regarded by peers of the plaintiff as a disciplinary measure.

12. Prior to the defendant's October 16, 1981 order of transfer, the plaintiff was investigating illegal drug activity in the area covered by Troop G. Plaintiff and other law enforcement persons were in-

formed that the son of Lt. Elmore might be involved in drug trafficking. Lt. Elmore was in charge of the Headquarters Staff at Troop G until October 9, 1981. He was not in the chain of command over the plaintiff.

13. The plaintiff and another trooper conveyed the information about Lt. Elmore's son to Captain McKee. McKee ordered the two to continue the investigation of the reported drug trafficking activities without regard to who might be involved.

14. Plaintiff had a legitimate concern that Lt. Elmore, who was aware of the investigation, might have been responsible for the leaking of information about a drug raid to those under investigation.

15. Lt. Elmore enlisted a private individual to investigate the plaintiff.

16. Plaintiff had information which suggested that a superior officer at Troop G had engaged in the cover-up of an alleged beating of a criminal suspect by two Troop G patrol persons.

17. Plaintiff also acted on information received from an informant that late night flights out of a local airport were involved in drug trafficking. He requested special airplane surveillance equipment from Captain McKee. McKee approved the surveillance and ordered the equipment. A local state representative, whose private airplane was housed at the airport, complained about the surveillance. The surveillance equipment was never received. The flights ended soon after the request.

18. In early October, 1981, the defendant Whitmer met with Lt. Elmore. The two discussed the transfer of the plaintiff to Troop C. Elmore returned to Willow Springs and told members of the Patrol and others in the community that plaintiff would be transferred. Plaintiff was not told of the transfer.

19. On October 12, 1981, Elmore wrote in a memorandum, which was referenced as "Disciplinary Action—Trooper W. E. Hughes," that the plaintiff should be transferred. Lt. Elmore complained about the plaintiff's investigation of his son's possible involvement in the local drug trafficking problem. That memorandum was endorsed by Lt. Hickman, Captain McKee and the defendant. Neither Elmore, Hickman, McKee, nor the defendant discussed the memorandum with the plaintiff prior to the issuance of the October 16 transfer order. The plaintiff was never given an opportunity to refute any charges made against him.

20. Plaintiff has an exemplary record on the Patrol. Lt. Elmore had, prior to 1981, evaluated the plaintiff highly. In 1981, Lt. Elmore stated that the plaintiff "doesn't seem to understand that the law needs to be bent a little at times."

21. The defendant, as Patrol Superintendent, is vested with authority under Missouri law to provide rules for discipline of Patrol members. The system presently in force requires formal charges of misconduct to be presented, a hearing, findings, a report and an appeal. Disciplinary transfers are permitted where warranted by the circumstances. *See* Appendix.

## II. CONCLUSIONS OF LAW

The parties agree that the defendant's October 16, 1981 order transferring the plaintiff from Troop G to Troop C was issued under color of state law. *See, e.g., Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Green v. Dumke*, 480 F.2d 624 (9th Cir. 1973) ("Under color of state law" requirement of Section 1983 is the same as the "state action" requirement of fourteenth amendment). The defendant, as the Superintendent of the Missouri State Highway Patrol, is empowered to prescribe rules and regulations for the discipline of members of the Patrol. Section 43.120 RSMo (1978). As the rules set out in the appendix make manifest, any member of the Patrol who is confronted with the threat of disciplinary action is entitled to written notification of the charges against him, a hearing before a disciplinary board and an appeal to the Superintendent of any disciplinary action taken by the board. Where disciplinary action is warranted, a Patrol member might be fined, demoted, transferred, suspended or dismissed.

■ Since Missouri freely provides a member of its State Highway Patrol with significant procedural safeguards in the event that the member is accused of conduct which could result in disciplinary action, see *Meachum v. Fano*, 427 U.S. 215, 229, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976); *Palmer v. Board of Ed. of City of Chicago*, 603 F.2d 1271, 1274 (7th Cir. 1979); *Arsberry v. Sielaff*, 586 F.2d 37, 46–47 (7th Cir. 1978), this Court is concerned with the personnel business of the State Highway Patrol only to the extent that it is necessary to assure that the challenged transfer was reached in conformity with relevant procedural requirements. *Doe v. Hampton*, 566 F.2d 265, 271–72 (D.C. Cir. 1977); *Villareal v. EEOC*, Slip Op. 80–0992 (W.D.Mo.1981). The question to be resolved by this Court is whether the defendant's order transferring the plaintiff from Troop G to Troop C was a disciplinary measure. If the transfer was a disciplinary action, then the plaintiff is entitled to the procedural protections afforded by the laws of Missouri. The question of whether the transfer was ordered for disciplinary reasons is wholly factual.

■ The weight of the evidence offered at the hearing on the preliminary injunction overwhelmingly establishes that the plaintiff was being disciplined by the defendant when the defendant ordered his transfer from the rural environment of Troop G to the urban environment of Troop C. The plaintiff is respected by the community of Willow Springs and is highly regarded by most of his peers on the Highway Patrol. His unblemished record on the Patrol is exemplary. Testimony offered at the hearing focused on the plaintiff's evenhanded enforcement of the laws of Missouri. The only criticism of the manner in which he has conducted himself—that he "doesn't seem to understand that the law needs to be bent a little at times"—merely enhances his reputation as a highly dedicated officer.

The plaintiff's evenhanded enforcement of the law gave rise to the investigation of the involvement of Lt. Elmore's son in drug trafficking. Captain McKee had ordered the plaintiff to continue the drug trafficking investigation even though a relative of a fellow Patrol member might be implicated. Lt. Elmore was not supportive of the investigation and, to protect his son, may have been responsible for the leak of information concerning a drug raid. The investigation embarrassed Lt. Elmore before Troop G and before the community of Willow Springs.

Another investigation by the plaintiff also implicated superiors within Troop G. The plaintiff suspected and gathered evidence which suggested that a superior officer had engaged in the cover-up of a beating received by a criminal suspect at the hands of two members of the Patrol. He offered evidence which suggested that a report had been altered in order to protect the officers involved.

In one other investigation, a state representative complained about the plaintiff's surveillance of an airport where the representative housed his private airplane. The airport was under surveillance because information had been received concerning the late night delivery of illegal drugs. While there was no evidentiary indication that the representative was involved, the plaintiff asserted that the representative's complaints were responsible for stopping the delivery of surveillance equipment to Troop G.

Many of the patrol persons who testified on behalf of the plaintiff openly expressed their reluctance to testify because they feared that they would be targeted for retaliation by their superior officers. Most who did testify declared their high respect for the plaintiff.

The October 12, 1981 memorandum filed by Lt. Elmore appropriately characterizes the reason for the transfer of the plaintiff. The memorandum, which was referenced as "Disciplinary Action—Trooper W. E. Hughes," outlines Lt. Elmore's complaints about the investigation of his son and about the plaintiff's relationship with a member of the Missouri State Crime Commission. In the days immediately preceding the writing of the memorandum, Lt. Elmore discussed the transfer of the plaintiff from

Troop G to Troop C with the defendant. Lt. Elmore told members of the Patrol that the transfer was to take place. The defendant endorsed the October 12, 1981 memorandum recommending disciplinary action and ordered the plaintiff's transfer on October 16, 1981.

The defendant contends that the transfer was not ordered for disciplinary reasons. He argues that the transfer was ordered to remedy a personality conflict within Troop G. While this argument might encompass one of the reasons for the decision to transfer, the evidence demonstrates that the primary reason was to discipline the plaintiff. The transfer did not remedy an imbalance in the Troop strengths of Troop G or Troop C since a patrolperson was simultaneously transferred from Troop C to Troop G. In addition, there was no evidence which suggested that the plaintiff possessed special skills needed in Troop C. Even members of the Patrol understood that a rapid, involuntary transfer is a tacit disciplinary measure.

The Court is compelled by the weight of the evidence to conclude that the defendant ordered the transfer of the plaintiff for disciplinary reasons. Since the plaintiff was denied a hearing on the disciplinary transfer, as required by Missouri law, he has demonstrated a violation of his fourteenth amendment and Section 1983 rights. The Court does not find a violation of Sections 1985 and 1986 and does not reach the plaintiff's first amendment claims. Accordingly, it is hereby

ORDERED that the defendant is permanently enjoined from issuing his October 16, 1981 order transferring the plaintiff from Troop G to Troop C and must bear the costs of this proceeding. It is further

ORDERED that the parties meet and submit for this Court's approval a sum reflecting the plaintiff's reasonable attorney's fees within twenty (20) days of the date of this order.

APPENDIX

# MISSOURI STATE HIGHWAY PATROL

| [SEAL] **GENERAL ORDER** | DATE OF ISSUE February 20, 1975 | EFFECTIVE DATE February 20, 1975 | NO. V–16–104 |
|---|---|---|---|

| SUBJECT COMPLAINT PROCEEDINGS AND DISCIPLINARY RULES | DISTRIBUTION B | AMENDS | |
|---|---|---|---|

| REFERENCE Sections 42.120, 43.150 and 43.230 RSMo. | RESCINDS Operations Manual: Chapters B–4 and B–5, and Section B–6.010, Par 1–a | NO. OF PAGES 7 |
|---|---|---|

PURPOSE:  To establish a procedure for processing complaints against employees, to list the rights of members who have been accused of violating rules and regulations, and to set forth policies and procedures which have been designed to remedy or correct weaknesses in the behavior of members.

I. STATUTORY PROVISIONS

A. Authority to Prescribe Discipline (excerpt from 43.120 RSMo.)

"The superintendent shall prescribe rules for instruction and discipline and make all administrative rules and regulations and fix the hours of duty for the members of the patrol"...

B. Removal — Hearing Board (excerpt from 43.150 RSMo.)

"After a probation period of one year the members of the patrol shall be subject to removal only for cause after a formal charge has been filed in writing before or by the superintendent and upon a finding by a majority of a board of five members appointed by the superintendent. The board shall be composed of one captain, one lieutenant, one sergeant, one patrolman, and one other member of the patrol, of the same rank as the accused member, if there is a member of equivalent rank, at least three of whom must be of the same political party as the accused member. Within thirty days after the petition is filed, the board shall conduct a hearing and report to the superintendent the finding by the majority of the board, whether the charges are true and if sufficiently serious to warrant removal"...

C. Duty to Obey and Kinds of Punishment (excerpt from 43.150 RSMo.)

"All lawful rules, regulations, and orders of the superintendent shall be obeyed by the members of the patrol who shall be subject to dismissal as provided or to such lighter punishment as suspension not to exceed thirty days, fine, reduction in rank, forfeiture of pay or otherwise as the superintendent may adjudge."

D. Violation of "Patrol Law" and Punishment (43.230 RSMo.)

"Any member of the patrol who violates any of the provisions of this chapter or commits any act not authorized herein shall be guilty of a misdemeanor and on conviction thereof shall be punished as provided by law for such offense by the court in the jurisdiction of which the offense is committed and shall be summarily dismissed from the Patrol."

II. COMPLAINTS: PROCEDURE FOR PROCESSING

A. Initial Action and Investigation

1. An accusation that a member has violated a law, rule, regulation or order shall be reported to the member's troop commander or division director immediately. The investigator will be designated by the superintendent when the violation is of a serious nature.

2. The investigator will contact the complainant in person, if practicable, before proceeding with the investigation. Whenever possible a written statement shall be obtained from the complainant. The complainant should be informed that the allegation will be investigated and that suitable action will be taken.

3. The involved member shall be advised of the complaint and may be directed to relate in writing all facts and circumstances which have direct bearing in the matter. If he is accused of violating any law he shall be accorded the same constitutional rights accorded to any citizen as defined by applicable court ruling. (If he refuses to answer questions specifically related to his performance of official duties or fitness for duty he shall be suspended and

made subject to formal charges which could result in his dismissal.) The investigation shall be thorough, and whenever possible, written statements shall be obtained from witnesses interviewed.

B. Investigation Report and Final Action

1. A complete report of the investigator's findings shall be forwarded through official channels to the superintendent. The investigating officer will classify the complaint as:

   a. Unfounded.　　　　Allegation is false or not factual.

   b. Exonerated.　　　　Incident complained of occurred, but was lawful and proper.

   c. Not substantiated.　Insufficient evidence either to prove or disprove the allegation.

   d. Substantiated.　　The allegation is supported by sufficient evidence.

2. The superintendent will determine what action will be taken and he will direct a member to personally contact the complainant or send a letter to advise the complainant of the results of the investigation.

## III. RESPONSIBILITY AND AUTHORITY TO DISCIPLINE

A. Responsibility

1. A supervisor will be responsible for the enforcement of the positive requirements and the expressly prohibited acts set forth in written directives. He will take disciplinary action only against subordinates within his direct line of command.

2. Before a disciplinary measure is recommended or assessed, a superior will attempt to determine whether the violation resulted from deliberate defiance of rules and regulations or inadvertently from ignorance or carelessness. Disciplinary action will be more severe if the violation is a willfully defiant act, or has an immoral or dishonest motive. A report shall be made through channels immediately by telephone if the penalty to be recommended is more serious than an oral reprimand. A written report shall follow. The affected member shall be immediately informed of the nature of any recommended disciplinary measure.

B. Authority

1. A member of the rank of corporal or above has authority to:

   a. make an oral or written reprimand.

   b. impose emergency suspension for the remainder of a tour of duty when it appears that such action will be in the best interest of the Patrol.

2. A member of the rank of sergeant or above has authority to:

   a. assess a fine not to exceed $50.00.

   b. recommend disciplinary transfer, suspension (not to exceed 30 days), demotion, or dismissal.

3. A member who has a troop, division or higher command position, has additional authority to:

    a. accept a written resignation and to take immediate steps toward terminating an employee if the employee desires to tender his resignation rather than submit to further investigation and a hearing. The letter of resignation shall be addressed to the superintendent. (Acceptance of resignation will not preclude the superintendent from pursuing criminal charges when such action is warranted.)

    b. file formal charges.

## IV. RIGHT OF APPEAL

A member may appeal in writing to the superintendent and forward it through channels if he considers a disciplinary measure which has been assessed or recommended for the superintendent's action to be unfounded, unjust or unfair. The member shall prepare any appeal within 72 hours of being informed of a disciplinary measure. (No disciplinary action will be instituted until the appeal has been reviewed and a decision made.)

## V. FORMAL CHARGES

### A. Preparation of Charges

A charge shall be filed in writing before or by the superintendent when a violation is of such nature that dismissal may be the outcome.

1. The charge will include, but not be limited to, names of complaining or injured persons, date and time of the incident, location of the incident, and the law, rule or regulation allegedly violated. See Appendix A.

2. The superintendent will determine the time and place for the hearing, which time shall not be less than 10 days, nor more than 30 days after the charge was filed.

### B. Notification of Charges and Hearing

The accused shall be served immediately with a copy of the charges and the time and place for the hearing. Service shall be in person by a member of the Patrol whenever possible. The accused will be directed to acknowledge in writing his receipt of the charges. He may include in his acknowledgement an answer to the charges.

### C. Exoneration of Charges

A member who has been exonerated of formal charges shall be entitled to be reinstated forthwith to his position and to receive back pay for the period of suspension.

## VI. IMPLEMENTATION OF DISCIPLINARY MEASURES

### A. Fines

A fine will be deducted from the gross salary (before deductions). The director of Personnel will prepare and submit to the director of Finance and Supply a Personnel Action Report; the deduction will be made when the next payroll is developed.

### B. Demotions and Disciplinary Transfers

The immediate supervisor of a subordinate who has been demoted, or who has received a disciplinary related transfer, will give special attention to the subordinate; he shall prepare at least 4 reports relative to his attitude and work record. Probationary Progress Report, SHP–62 will be converted for

use by marking through the words "probationary", and "recruit", and "probationer" located on the top portion of the form.

1. The first report will be written within 30 days after the disciplinary action; other reports shall follow — one each 60 days.

2. The original copies of the reports will be forwarded through channels to the superintendent and they shall be placed in the official internal affairs file. Duplicates will be placed on the troop's internal affairs file.

D. Suspension

A member who has been suspended will be removed from the payroll during the period of suspension (or appeal) unless otherwise ordered by the superintendent and he will not have the powers and duties specified in Chapter 43, RSMo. Suspension may be either the first step in the disciplinary process or the penalty assessed. A member under suspension is obligated:

1. to immediately surrender his commission card and all State owned property if directed.

2. to obey all rules and regulations which would affect the conduct and actions of an off duty member.

3. to not wear his uniform during any period of suspension.

E. Dismissal, or Resignation in Lieu of Investigation or Hearing

All responsibilities of command personnel outlined in the directive entitled Termination of Employment shall apply.

## VII. HEARING BOARD: POLICY AND PROCEDURE

Members of a hearing board will be selected and will act as prescribed in Section 43.150, RSMo., and as provided in this general order.

A. General Provisions

1. The superintendent will designate a member to pursue the charges against the accused. It will be his duty to prepare the case for presentation and to interrogate witnesses on behalf of the Patrol.

2. No member may sit on a hearing board if he is in any way connected with the case being heard.

3. The accused shall have the right of counsel at all stages of the proceedings and have the right to be heard and interrogate witnesses. He shall not be required to make a statement.

4. All expenses incurred by the defense will be borne by the accused.

5. Failure to appear before a hearing board without permission when scheduled will be considered prima facie evidence of guilt.

6. Members of a hearing board and investigators are forbidden to discuss with any other person the details of the case or the character or reputation of the accused or accuser, except for the specific purpose of determining facts.

B. Presiding Officer

The ranking officer of the hearing board will preside at the hearing. It will be his responsibility to conduct a fair and impartial hearing and his decisions regarding the procedure will be binding. He will:

1. Arrange for all testimony to be recorded on tape, and by a stenographer. (Two typed copies of the testimony signed by the presiding officer will be presented to the superintendent within 10 days after the hearing.)

2. Make all rulings upon the submission of evidence and motions.

3. Comment upon testimony for the purpose of clarity and brevity.

4. Conduct the hearing with efficiency and dispatch.

C. Order of Procedure

1. Reading of the formal charge(s) by the presiding officer.

2. Presentation of testimony and evidence in support of action taken by the Patrol with respect to matters contested by the member.

3. Presentation of testimony and evidence supporting the member's appeal.

4. Rebuttals and arguments summarizing any part or all of the case.

D. Decision of the Board

The board will act by majority vote. The presiding officer will direct one of the members who voted with the majority to write the opinion of the board. The opinion will include whether the charges were true, and if true, whether serious enough to warrant removal and a recommendation, and a statement of the reasoning whereby the board arrived at its decision.

1. Any member of the board who voted with the majority, and therefore concurs in the results of the decision, but who reached that result by a line of reasoning different from that stated in the opinion prepared, may prepare a concurring opinion setting forth his own line of reasoning.

2. Any member of the board who voted with the minority, shall prepare a dissenting opinion to explain why he believes the case should have been decided differently.

Authenticated by:

JHL        P/PR–D

/s/ S. S. Smith
S. S. SMITH, Colonel
Commanding Officer

G. O. V–16–104   Appendix A
FORM S.H.P. 15R1

*For departmental use only*

SAMPLE FORMAL COMPLAINT

# MISSOURI STATE HIGHWAY PATROL

Rolla, Missouri

February 7, 1975

**Subject:**  Formal Complaint Against Trooper John A. Doe
**To**    **:**  Commanding Officer
       Missouri State Highway Patrol
       Jefferson City, Missouri

It is herewith stated that reasonable and substantial cause exists to establish that Trooper John A. Doe has committed an act or acts in violation of the regulations of the Missouri State Highway Patrol, specifically of:

GENERAL ORDER III–2–19, Item II–B–12

It is charged that on January 7, 1975, approximately 9:30 p. m., till 11:45 p. m., while in Patrol uniform and while assigned to routine patrol duty in Phelps County, Trooper Doe drank intoxicating beverages in Club 66, Doolittle, and became intoxicated.

O. A. Drinkard, Captain
Commanding Troop I

OAD:msr

# MISSOURI STATE HIGHWAY PATROL

| [SEAL] **GENERAL ORDER** | DATE OF ISSUE<br><br>December 3, 1976 | EFFECTIVE DATE<br><br>December 6, 1976 | NO.<br><br>V–16–104A |
|---|---|---|---|
| SUBJECT<br><br>COMPLAINT PROCEDURES AND DISCIPLINARY RULES | DISTRI-BUTION<br><br>B | AMENDS<br><br>General Order V–16–104 | |
| REFERENCE | RESCINDS | | NO. OF PAGES<br><br>2 |

Item III–B is amended to read:

B. Authority

All officers of the rank of corporal and above have authority to make oral and written reprimands, to impose emergency suspension for the remainder of a tour of duty when it appears that such action will be in the best interest of the patrol, and to recommend other punishment. Additionally a:

1. corporal may require the forfeiture of 1 regular leave day.
2. sergeant may require the forfeiture of 2 regular leave days.
3. lieutenant may require the forfeiture of 4 regular leave days.
4. member who has a troop division or higher command position may require the forfeiture of 5 regular leave days, file formal charges, accept a written resignation, and take immediate steps toward terminating an employee if the employee desires to tender his resignation rather than submit to further investigation and a hearing. The letter of resignation shall be addressed to the superintendent. (Acceptance of resignation will not preclude the superintendent from pursuing criminal charges when such action is warranted.)

Item VI is amended to read:

## VI. IMPLEMENTATION OF DISCIPLINARY MEASURES

A. Forfeiture of Regular Leave Time

A member who has received this punishment will begin working extra days immediately, but will not be required to work more than 4 extra days in one schedule period. He will be compensated for regular meal expenses on the additional days worked.

B. Fines

A fine will be deducted from the gross salary (before deductions). The director of Personnel will prepare and submit to the director of Finance and Supply a Personnel Action Record; the deduction will be made when the next payroll is developed.

C. Demotions and Disciplinary Transfers

The immediate supervisor of a subordinate who has been demoted, or who has received a disciplinary transfer, will give special attention to the subordinate; he shall prepare at least 4 reports relative to his attitude and work record. Probationary Progress Report SHP–62 will be converted for use by marking through the words "probationary," and "recruit," and "probationer" located on the top portion of the form.

1. The first report will be written within 30 days after the disciplinary action; other reports shall follow — one each 60 days.

2. The original copies of the reports will be forwarded through channels to the superintendent and they shall be placed in the official internal affairs file. Duplicates will be placed in the troop's internal affairs file.

D. Suspension

A member who has been suspended will be removed from the payroll during the period of suspension (or appeal) unless otherwise ordered by the superintendent and he will not have the powers and duties specified in Chapter 43, RSMo. Suspension may be either the first step in the disciplinary process or the penalty assessed. A member under suspension is obligated:

1. to immediately surrender his commission card and all State owned property if directed.

2. to obey all rules and regulations which would affect the conduct and actions of an off-duty member.

3. to not wear his uniform during any period of suspension.

E. Dismissal, or Resignation in Lieu of Investigation or Hearing

All responsibilities of command personnel outlined in the directive entitled Termination of Employment shall apply.

Authenticated by:

JRP     P/R–S

/s/ S. S. Smith
S. S. SMITH, Colonel
Commanding Officer