Robert Ian SHERMAN, for himself and as natural guardian for Richard Harry Sherman, a minor son, Plaintiffs,

v.

COMMUNITY CONSOLIDATED SCHOOL DISTRICT 21 OF WHEELING TOWNSHIP, Lloyd Descarpentrie, School District Superintendent, and Dr. Ferne Garrett, Principal of Riley School, individually and as representatives of the State of Illinois, and Neil F. Hartigan, Attorney General of the State of Illinois, Defendants.

No. 88 C 9205.

United States District Court,
N.D. Illinois, E.D.

Feb. 28, 1991.

Allan J. Berger, Wauconda, Ill., for plaintiffs.

Marita C. Sullivan, Asst. Atty. Gen., Robert Reske, Gurion & Lewis, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

Plaintiffs Robert Sherman and his minor son Richard Sherman are atheists and they allege that the Illinois statute which provides for the daily recitation of the Pledge of Allegiance in public elementary schools [1] violates their rights under the First and Fourteenth Amendments to the Constitution. Mr. Sherman filed a two-count complaint against the school district in which his son's school is located, the school district superintendent, the principal of his son's school, and the Illinois Attorney General seeking to have the statute declared unconstitutional and requesting monetary damages from the defendants.[2] Mr. Sherman and defendant Attorney General Hartigan filed cross-motions for summary

---

1. Ill.Rev.Stat. ch. 122, ¶ 27–3 provides, in part, "The Pledge of Allegiance shall be recited each school day by pupils in elementary educational institutions supported or maintained in whole or in part by public funds."

2. The defendants previously filed motions to dismiss and the court denied the motions. *See Sherman, et al. v. Community Consolidated School District 21 of Wheeling Township, et al.,* 714 F.Supp. 932 (N.D.Ill.1989) (denying motion to dismiss of defendants School District 21, Descarpentrie and Garrett) and *Sherman, et al. v. Community Consolidated School District 21 of Wheeling Township, et al.,* 745 F.Supp. 1371 (N.D.Ill.1990) (denying defendant Hartigan's motion to dismiss).

judgment regarding Counts I and II. Defendants School District 21, Superintendent Descarpentrie and Principal Garrett ("the school defendants") filed a motion to dismiss Count I and a motion for summary judgment on Count II. For the following reasons, the court denies the school defendants' motion to dismiss Count I, denies plaintiffs' motion for summary judgment on Counts I and II and grants defendant Hartigan's motion for summary judgment on Counts I and II. The granting of defendant Hartigan's motion for summary judgment renders moot the school defendants' motion for summary judgment on Count II.

### Motion to Dismiss Count I

██ In Count I of the second amended complaint, plaintiffs seek a declaratory judgment that the Illinois pledge law is unconstitutional because it violates the Establishment Clause and the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. In Count I plaintiffs also seek a permanent injunction against all defendants to "restrain[ ] defendants from compelling adherence to" the Illinois pledge law. Re–Amended Complaint, Count I, Prayer for Relief, ¶ 2. Defendants School District 21, Superintendent Lloyd Descarpentrie and Principal Ferne Garrett maintain that Count I should be dismissed against all the defendants except defendant Hartigan because defendant Hartigan is the only defendant with the authority to enforce the statute. *See* Motion to Dismiss Count I at 2. *See also, Koehler v. Ogilvie*, 53 F.R.D. 98, 102 (N.D. Ill.1971) ("officers of a state who are clothed with some duty in regard to the enforcement of the laws of the state ... may be enjoined by a federal court" from enforcing an unconstitutional statute), *aff'd*, 405 U.S. 906, 92 S.Ct. 938, 30 L.Ed.2d 777 (1971).

While the defendants are correct that the Attorney General or the State's Attorney are normally the officials charged with enforcing statutes, Mr. Sherman alleges in the complaint that defendants Garrett and Descarpentrie, on behalf of School District 21, enforce the pledge statute in his son's school. For example, Mr. Sherman alleges that Principal Garrett asks his son to participate in the daily pledge, that none of the defendants advise his son of his right not to participate, and that defendants Descarpentrie and Garrett have supervisory responsibilities and policymaking powers in the district and in his son's school. *See* Re–Amended Complaint, ¶¶ 8, 11 and 23. On a motion to dismiss, the court is obligated to take the allegations in the complaint as true. Therefore, the court finds that based on plaintiffs' allegations that all defendants enforce the statute in issue, all defendants are properly named in Count I. The court denies the motion of School District 21 and defendants Descarpentrie and Garrett to dismiss Count I against them.

### Motions for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that a motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Plaintiffs and defendant Hartigan, by filing cross-motions for summary judgment, represent that there are no genuine issues of material fact for trial and that the issue of whether the Illinois pledge statute is constitutional can be decided by the court as a matter of law. As noted above, plaintiffs allege that the statute is unconstitutional because it violates the Establishment Clause and the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. The court will address each of these contentions in turn.

### Establishment Clause

In its first opinion in this case, the court discussed the viability of plaintiffs' claim that the Illinois pledge statute violates the Establishment Clause of the First Amendment to the Constitution. *See Sherman*, 714 F.Supp. at 934–36. The court noted that a case from another circuit specifically held that the recital of the pledge of alle-

giance in a public school does not violate the Establishment Clause. *See Smith v. Denny*, 280 F.Supp. 651 (E.D.Ca.1968), *appeal dismissed*, 417 F.2d 614 (9th Cir.1969). The court also cited cases holding that neither the singing of the national anthem in public school nor the use of the motto "In God We Trust" on coins violates the Establishment Clause. *See Sheldon v. Fannin*, 221 F.Supp. 766 (D.Ariz.1963); *Aronow v. United States*, 432 F.2d 242 (9th Cir.1970); *Hall v. Bradshaw*, 630 F.2d 1018 (4th Cir. 1980) (in dicta the court stated that "[r]eferences to the Deity in our ceremonies and on our coinage and seals do not violate the Establishment Clause because they merely reflect this fact of our history and no longer have any potentially entangling theological significance"), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1480, 67 L.Ed.2d 613 (1981). Finally, the court stated that although the U.S. Supreme Court has not expressly ruled on whether a pledge statute like the one adopted in Illinois violates the Establishment Clause, "[t]he Court has expressed its implicit approval of the Pledge ..." *Sherman*, 714 F.Supp. at 936. Based on this review of the case law, the court stated that "the failure of the plaintiffs' Establishment Clause claim is all but a foregone conclusion." *Id.* at 935.

■ However, the court did not dismiss plaintiffs' Establishment Clause claim pursuant to Fed.R.Civ.P. 12(b)(6) because to do so, the court would have had to examine documents outside the pleadings, and that is forbidden in the context of a motion to dismiss. Now that the court has been presented with motions for summary judgment, the court may look at documents outside the pleadings and perform the necessary analysis to decide whether the Illinois pledge statute violates the Establishment Clause of the First Amendment. In performing this analysis, the court will use the test developed in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), for determining whether a statute comports with the Establishment Clause. The three elements of the test are as follows:

First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion' [citations omitted].

*Id.* at 612–13, 91 S.Ct. at 2111.

The court finds that there are no genuine issues of material fact as to whether the Illinois pledge law passes all three prongs of the *Lemon* test. First, the legislature adopted the law for the secular purpose of instilling patriotic values in elementary school students. Plaintiffs point to the comments of one legislator to try to show that the pledge law had a religious purpose. Senator Mitchler stated,

You should teach your children to pray and you should teach your children to respect your Country. For God and country, because that's the basis on which this nation was founded. I think this is a training period in grades one through six and I'd even be having some sort of a prayer in the schools and ... and I don't think that that's being overburdensome or anything because I think it's teaching them patriotism and I don't see anything wrong with that ... to be able to stand up and recite the Pledge and have a prayer....

Plaintiffs' Memo. in Support of Motion for Summary Judgment at 6. However, Senator Mitchler was the only legislator who tried to link the pledge and prayer. Moreover, his comments about prayer in school are not relevant to the purposes of the pledge statute because the statute does not provide for prayer in school. At most, these comments show that if given the chance, it seems this Senator would vote for an unconstitutional law authorizing prayer in the public schools.

■ In contrast to Senator Mitchler's comments, the sponsors of the pledge law, Senator Nimrod and Representative Pullen, stated several times that the purpose of the law was to instill patriotic concern and knowledge of American ideals in elementary school students. *See e.g.*, Ill.Gen.Assembly, Senate Floor Debates, May 22, 1979, pp. 273, 275; June 28, 1979, p. 92;

House Floor Debates, June 25, 1979, p. 65.[3] The secular, patriotic purpose of the law is clear when one examines the statute as a whole. The statute not only requires the pledge to be recited daily, but also requires that students be taught and tested on the principles enunciated in the American Declaration of Independence, the U.S. Constitution and the Constitution of the State of Illinois. The statute also provides that students must learn about the proper use and display of the American flag, and voting methods. In sum, the text of the statute and its legislative history reveal that the purpose of the pledge law is to teach secular, patriotic values and not religious values.

The statute also passes the second prong of the *Lemon* test because the primary effect of the statute neither advances nor inhibits religion. As noted above, the primary effect of the statute is to teach students about the principles under which our government operates and not to advance any particular religious beliefs. The recital of the pledge, like the singing of the National Anthem, "is not a religious but a patriotic ceremony, intended to inspire devotion to and love of country. Any religious references therein are incidental and expressive only of the faith which as a matter of historical fact has inspired the growth of the nation." *Sheldon,* 221 F.Supp. at 774.

Finally, the statute passes the third part of the *Lemon* test because it does not cause excessive entanglement of government with religion. The statute at issue in this case is a far cry from the statute which the *Lemon* Court held would create an excessive entanglement between church and state. In *Lemon,* the Court examined two state statutes which authorized using public funds to subsidize teachers who taught secular subjects in non-public schools. The Court found that the statutes would cause excessive entanglement with religion because the majority of the non-public schools which would receive the funds were parochial schools. Therefore, the state governments would have to constantly monitor the programs to insure that public funds were not being used for any religious purposes. In this case, the statute requires the teaching of secular subjects in public, non-parochial schools, so no entanglement with religion is involved. Based on this analysis, the court finds as a matter of law that the Illinois statute does not violate the Establishment Clause of the First Amendment.

### Free Exercise

Although the court held in its previous opinion that "the failure of plaintiffs' Establishment Clause claim [was] all but a foregone conclusion," the court went on to find that plaintiffs had "stated a claim for violation of the Free Exercise Clause." *Sherman,* 714 F.Supp. at 935, 937. The court found that the allegations in plaintiffs' complaint that Richard Sherman was told to recite the pledge daily by his principal, that he was embarrassed and faced sanctions when he refused, and that the language of the statute was mandatory were sufficient to state a claim that Richard Sherman was unconstitutionally coerced to recite the pledge. *Id.* at 937. It should be noted that the court gave plaintiffs' complaint the "solicitude accorded to *pro se* pleadings" because plaintiffs drafted and filed their complaint before they obtained counsel. *Id.* at 933 n. 1. Moreover, the court did not consider any other documents, such as the school defendants' affidavits stating that Richard was free to remain seated during the pledge, because a court cannot consider documents outside

---

**3.** The court notes that there was much heated debate in the legislature over whether the statute as written would be violative of the Free Exercise Clause of the First Amendment because it could be interpreted to mandate the recital of the pledge. The court will discuss this issue when it addresses plaintiff's Free Exercise claim. However, the issue of compulsion is not relevant when deciding whether a statute has a secular purpose in compliance with the Establishment Clause. *See Engel v. Vitale,* 370 U.S. 421, 430, 82 S.Ct. 1261, 1266, 8 L.Ed.2d 601 (1962) ("The Establishment Clause ... is violated by the enactment of laws which establish an official religion whether these laws operate directly to coerce non-observing individuals or not.").

the pleadings on a motion to dismiss. In its second opinion in this case, in which the court considered defendant Hartigan's motion to dismiss, the court reiterated its holding that plaintiffs' complaint was sufficient to state a claim under the Free Exercise Clause. However, the court warned that "when the court considers the parties' summary judgment motions, vague allegations of coercion, unsupported by competent affidavits, will not be sufficient to create a genuine issue of material fact." *Sherman*, 745 F.Supp. at 1374, n. 4.[4] The court will now determine whether there is a genuine issue of fact regarding plaintiffs' Free Exercise claim.

The parties agree that when school officials force public school students to recite or participate in the Pledge of Allegiance, it violates the students' rights under the Free Exercise Clause of the First Amendment. The Supreme Court so held in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), and many lower courts have reaffirmed this principle since *Barnette* was decided. *See, e.g., Mozert v. Hawkins County Board of Education*, 827 F.2d 1058, 1066 (6th Cir.1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988); *Lanner v. Wimmer*, 662 F.2d 1349, 1354 (10th Cir.1981); *Lipp v. Morris*, 579 F.2d 834, 835–36 (3d Cir.1978); *Goetz v. Ansell*, 477 F.2d 636, 637–39 (2d Cir.1973); *Frain v. Baron*, 307 F.Supp. 27, 31–34 (E.D.N.Y.1969). However, the parties disagree about whether the Illinois pledge law, and the School defendants' implementation of the law violate the principles enunciated in these cases.

■ Plaintiffs maintain that the court should hold Ill.Rev.Stat. ch. 122, ¶ 27–3 facially unconstitutional because the use of the word "shall" makes the statute coercive, regardless of whether the school defendants are applying the statute in a man-

datory way. The court agrees that it was an unfortunate choice to use the word "shall" in the statute without explicitly creating an exception for conscientious objectors, however the use of the word "shall" alone does not necessitate declaring the statute to be facially unconstitutional. The statute does not state that "all" students shall say the pledge, and therefore an exception can be implied for conscientious objectors. Moreover, the statute contains no penalty on its face. In fact, the sponsors of the law relied on the lack of a penalty when arguing that the law did not violate the principles enunciated in *Barnette, supra. See* Ill.Gen. Assembly, Senate Floor Debates, May 22, 1979, pp. 270–71; House Floor Debates, June 25, 1979, pp. 61, 64; June 30, 1979, pp. 60–61. Finally, the court does not find the statute facially unconstitutional because "plaintiffs must generally show that a statute is unconstitutional as applied, not merely that it may be interpreted to authorize unconstitutional actions." *Van Zandt v. Thompson*, 839 F.2d 1215, 1218 (7th Cir.1988), *citing, Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 501–04, 105 S.Ct. 2794, 2800–02, 86 L.Ed.2d 394 (1985). The court will now examine whether the statute is unconstitutional "as applied."

■ Defendant Hartigan states in his motion for summary judgment that "plaintiff Richard Sherman has never been in any way required, forced, or compelled to 'stand during, recite or otherwise participate in the Pledge of Allegiance' by his teacher or any employee of Community Consolidated School District 21 of Wheeling Township." Hartigan's Memo. in Support of Motion for Summary Judgment at 4. As evidence of this, defendant Hartigan cites to the affidavits of Superintendent Descarpentrie, Principal Garrett and Richard Sherman's first grade teacher, Marilyn Barden. *See* School Defendants' Response

---

**4.** After denying defendant Hartigan's motion to dismiss, the court set a briefing schedule for defendant Hartigan's motion for summary judgment. Thus, plaintiffs, having been warned about the importance of sufficient affidavits, could have submitted supplementary affidavits in response to defendant Hartigan's motion for summary judgment. However, plaintiffs chose not to file any response to defendant Hartigan's motion and instead relied on the briefs and affidavits previously filed in support of plaintiffs' motion for summary judgment and in opposition to the school defendants' motions.

to Plaintiffs' Motion for Summary Judgment, attached affidavits. All three affiants state that Richard Sherman was never required participate in the daily pledge and that he was never punished or threatened with punishment because of his refusal to participate. *Id.*

Robert Sherman attempts to rebut these affidavits with his own affidavit in which he states, "Defendant Garrett, principal of the school attended by my son, asks my son to stand with one hand over his heart and participate with the other pupils in reciting the pledge." Affidavit of Robert Sherman, ¶ 5. However, Mr. Sherman does not allege in his affidavit that this statement is based on personal knowledge, as is required by Fed.R.Civ.P. 56(e). He does not state that he attended his son's school and saw Principal Garrett asking his son, in particular, to stand during the pledge. Without a properly supported affidavit, plaintiff cannot create a genuine issue of material fact as to whether Principal Garrett, or any other school official directly forced his son to participate in the pledge.

Not only does Mr. Sherman's affidavit fail to create a genuine issue of material fact regarding direct coercion, but it also is insufficient to create a genuine issue of fact regarding indirect coercion. Mr. Sherman may not rest on the allegations of indirect coercion in his complaint, but must put forth specific facts showing that there is a genuine issue for trial. *See* Fed.R. Civ.P. 56(e). Mr. Sherman states in his affidavit that his "son has been knocked down by other children who are angered at his opposition to pledging" and that his son has suffered "embarrassment and humiliation ... when the pledge ceremony is conducted." Affidavit of Robert Sherman, ¶¶ 8, 10. However, Mr. Sherman does not explain how he knows that the reason his son was knocked down was because of his refusal to recite the pledge—Mr. Sherman just expects the court to take his word for it. Similarly, Mr. Sherman does not state how he knows that his son feels embarrassed during the pledge ceremony. If Mr. Sherman's son told him that he was knocked down for not saying the pledge or that he felt humiliated and embarrassed

during the pledge ceremony, Mr. Sherman should have so stated in his affidavit. Mr. Sherman should have also stated that his son is incompetent to make an affidavit on his own behalf and explain why. *See, e.g., United States v. Jones,* 482 F.2d 747, 752 (D.C.Cir.1973) (test for competency of child witness depends upon intelligence of the child and whether the child understands the difference between truth and falsehood). In short, Mr. Sherman's affidavit, in its present form, does not create a genuine issue of material fact regarding whether Richard Sherman feels indirect coercion to recite the pledge.

Moreover, even if Mr. Sherman had presented competent evidence that his son feels indirectly coerced by peer pressure to recite the pledge, it is doubtful that this would have been sufficient to prove a violation of Richard Sherman's Free Exercise rights. This is because no other court has held that the mere recital of the pledge, without any direct coercion by school officials, violates the First Amendment. In previous cases in which school pledge laws or policies were found to be unconstitutional, the school officials "punished" the children in some way for refusing to participate. *See, e.g., Barnette, supra.* (students who refused to participate in the pledge were expelled and both the students and their parents were subject to prosecution for the student's "unlawful absence"); *Lipp, supra.* (student was "threatened" by school officials when she refused to stand during pledge); *Goetz, supra.* (students opposed to pledge had to either stand in silence, leave the room, or face suspension); *Banks v. Board of Public Instruction,* 314 F.Supp. 285 (S.D.Fla.1970) (student suspended for refusing to stand during pledge), *vacated,* 401 U.S. 988, 91 S.Ct. 1223, 28 L.Ed.2d 526 (1971). In the case at bar, it is undisputed that Richard Sherman was not punished or threatened with punishment by any school official for failing to participate in the pledge. At most, Richard faced indirect pressures because all the other children were conforming and saying the pledge and he was not.

The court recognized in its first opinion that these indirect pressures can be compelling. As Justice Brennan stated in *Abington School District v. Schempp*, 374 U.S. 203, 290, 83 S.Ct. 1560, 1607, 10 L.Ed.2d 844 (1963), "[C]hildren are disinclined at this age to step out of line or to flout 'peer-group norms.'" However, Justice Brennan made this remark in the context of a case involving state laws which required reading passages from the Bible or the Lord's Prayer at the beginning of each school day and these laws were found to violate the Establishment Clause. In contrast, reciting the pledge in public schools does not violate of the Establishment Clause. Moreover, a state legislature is entitled to establish a curriculum for its schools which includes the teaching of the Pledge of Allegiance to those students who have no religious objections to reciting the pledge. In *Palmer v. Board of Education of the City of Chicago*, 603 F.2d 1271, 1274 (7th Cir.1979), *cert. denied*, 444 U.S. 1026, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980), the Seventh Circuit held that a public school teacher who was opposed to the pledge and other patriotic exercises on religious grounds could not "require others to submit to her views and to forego a portion of their education they would otherwise be entitled to enjoy." Similarly, even if the Shermans had made a proper showing regarding the peer pressure Richard no doubt feels, the court believes that that alone would not be a sufficient reason to deny the other children their right to learn how to participate in this patriotic exercise. For these reasons, the court grants defendant Hartigan's motion for summary judgment regarding plaintiff's Free Exercise claim.

### Equal Protection

Finally, the court finds that there is no genuine issue of fact regarding plaintiff's claim that the Illinois pledge statute violates the Equal Protection Clause of the Fourteenth Amendment and the court grants defendant Hartigan's motion for summary judgment on this claim as well. In order to determine whether a law is violative of the Equal Protection Clause, a court must first determine what level of scrutiny to apply. *See Faheem-El v. Klincar*, 841 F.2d 712, 727 (7th Cir.1988). If the law infringes on a fundamental right or discriminates on the basis of a suspect category, the law is reviewed under either a strict or intermediate scrutiny standard. *Id.* "If no fundamental rights or suspect categories are involved, a court must simply determine whether the differential treatment of similarly situated individuals is rationally related to a legitimate state interest." *Id.* The court has already found that the statute does not violate the religion clauses of the First Amendment, so no fundamental right is involved. Also, the law does not discriminate on the basis of any suspect category. Therefore, the court must determine whether the law is rationally related to a legitimate state interest.

As the court stated above, Ill.Rev.Stat. ch. 122, ¶ 27–3 is rationally related to the legitimate state interest of instilling knowledge of and appreciation for patriotic values in public school students. As the Seventh Circuit stated in *Palmer*, 603 F.2d at 1274, "[t]here is a compelling state interest in the choice and adherence to a suitable curriculum for the benefit of our young citizens and society." Learning the Pledge of Allegiance can certainly be considered part of a "suitable curriculum" for students. Therefore, the court finds the pledge statute is rationally related to a legitimate state interest. Defendant Hartigan's motion for summary judgment on plaintiff's Equal Protection Clause claim is granted.

### Conclusion

For the aforementioned reasons, the court finds that all defendants were proper parties in Count I of the complaint. Therefore, the court denies the school defendants' motion to dismiss Count I against them. The court further finds that that there is no genuine issue of material fact as to whether Ill.Rev.Stat. ch. 122, ¶ 27–3 is constitutional under the First and Fourteenth Amendments to the Constitution. The court grants summary judgment in

favor of all defendants and denies plaintiffs' motion for summary judgment.