Mary FRAIN, a minor under the age of 21 years, by her mother, Maryalice Frain, and Susan Keller, a minor under the age of 21 years, by her mother, Caroline D. Keller, Plaintiffs,

v.

Harold BARON, individually and as Principal of Junior High School 217Q, and Hugh McDougall, individually and as District Superintendent of District 28, New York Board of Education, Defendants.

Raymond MILLER, a minor under the age of 21, by his mother, Earline Miller, Plaintiff,

v.

Louis SCHUKER, individually and as Principal of Jamaica High School, Max Rubinstein, individually and as District Superintendent of District 29, New York Board of Education, and Nathan Brown, individually and as acting Superintendent of Schools for New York City, Defendants.

Nos. 69–C–1250, 1347.

United States District Court E. D. New York.

Dec. 10, 1969.

Paul G. Chevigny, N. Y. Civil Liberties Union, New York City, for Susan Keller, Caroline D. Keller and Earline Miller.

Hendler & Siegel, New York City, for Mary Frain and Maryalice Frain; by Samuel I. Hendler, New York City, of counsel.

J. Lee Rankin, Corp. Counsel, New York City, for defendants; by Robert E. Hugh, Asst. Corp. Counsel, of counsel.

JUDD, District Judge.

## MEMORANDUM AND ORDER

These civil rights actions are significant because they pit popular ideas of patriotism and the authority of school administrators against students' rights of free expression. The particular controversy is minor, involving the refusal of three students to leave their "homerooms" during the daily Pledge of Allegiance, as a condition for exercising their undoubted constitutional right not to participate in the Pledge. The resulting collision is serious, because it involves suspension from school as one alternative, and a court injunction against the school authorities as the other.

The facts and legal authorities must be reviewed in the light of the principle that:

"It is now beyond dispute that the constitution goes to school with the

student and that the state may not interfere with the student's enjoyment of its presence." Denno, Mary Beth Tinker Takes the Constitution to School, 38 Fordham L.Rev. (1969) 35, 56.

## Facts

The Pledge of Allegiance was written by Frances Bellamy, a Baptist minister, to be used at the Chicago World's Fair Grounds in October, 1892, on the four hundredth anniversary of the discovery of America. Its present form, as set forth in Regulations of the New York Commissioner of Education (Art. XVI, § 150, ¶ 5) and in the United States Code (36 U.S.C. § 172) is:

> "I pledge allegiance to the flag of the United States of America and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all."

The words "under God" were added in 1954 (Pub.L. 83–297). The Corporation Counsel has recognized in an earlier case that anyone may be excused from repeating these two words. See Matter of Superintendent of Schools v. Seymour Jacobs, a Regular Teacher of French, Report of Bethuel L. Webster as Trial Examiner, p. 5 (1968).

The Commissioner of Education is required by statute to prepare a program for a daily salute and pledge of allegiance to the flag. Education Law § 802, McKinney's Consol.Laws, c. 16, subd. 1. The By-Laws of the New York City Board of Education require a salute to the flag only once a week (Sec. 90, subd. 31), but a Circular from the Superintendent of Schools in 1963 directed that:

> "at the commencement of each school day, the Pledge of Allegiance to the Flag be followed by the singing in unison of a patriotic song."

The purpose of the ceremony is to encourage patriotism and loyalty to democratic institutions.

Plaintiffs Mary Frain and Susan Keller are twelve-year old white girls attending Junior High School 217Q, in an accelerated class which does three years' work in two years.

Plaintiff Raymond Miller is a black boy, a senior at Jamaica High School.

All three plaintiffs refused to recite the Pledge of Allegiance, because of a belief that the words "with liberty and justice for all" are not true in America today. One is an atheist, who also objected to the words "under God."

They refused to stand during the Pledge, because that would constitute participation in what they considered a lie. They also refused to leave the room, and stand in the hall outside their homerooms until the conclusion of the ceremony, because they considered exclusion from the room to be a punishment for their exercise of constitutional rights.

It does not appear whether any plaintiff joined in the required patriotic song, or whether they were required to stay in the hall during the singing as well as the Pledge.

Plaintiff Miller was required to submit to the Assistant Principal for Guidance a written statement of his reasons for not saluting. His typewritten statement, in one page, expresses the belief that "America is perhaps the greatest country in the world," but that it must undergo certain basic changes, and provide true equality, freedom and justice for all, end oppression of minorities, and give black people a greater opportunity to advance. He concluded that:

> "As for the pledge: I believe it is untrue ('Liberty and justice for all') and I refuse to swear to a lie."

Mary Frain and Susan Keller are the remnant of a larger group who previously sat in silence during the Pledge of Allegiance. The others, after being summoned to the Principal's office to discuss their conduct, accepted one of the alternatives, of standing silently or going outside their classrooms during the Pledge. The papers do not show what supervision, if any, is provided in

the halls while the non-participating students are excluded from class.

The policy of requiring a non-participating student to leave the area in which the flag salute is taking place was adopted by the Superintendent of Schools in March, 1969, in granting a petition from a student at Jamaica High School to be excused from taking part. The Superintendent stated:

"This decision is based on rulings by the United States Supreme Court and more recently by a Trial Examiner designated by the Board of Education, that both pupils and teachers have a right, as a matter of conscience, to refuse to salute the flag and recite the Pledge of Allegiance. I believe that no pupil should be permitted to sit during such a ceremony, since to do so might create disorder."

Raymond Miller asserts that he was nevertheless permitted to remain seated from March to October, when the publicity about the Frain suit called attention to the matter. Defendants assert that he stood silently during this time, and was not observed to remain seated until October 17, 1969, when his conduct resulted in suspension. This minor dispute of fact does not require decision at this time.

Between October 10, when the Frain and Miller girls were returned to school under this court's temporary restraining order, and November 10, when the City's reply papers were submitted, fifty other students in Junior High School 217Q have also sat silently during the Pledge of Allegiance, on one or more occasions. There is no showing that this has caused any disorder.

For two months in 1967 a teacher in Far Rockaway High School remained seated during the Pledge of Allegiance and did not recite the Pledge. A special Trial Examiner for the Board of Education, in ruling on charges against the teacher, found that his conduct did not cause disorder in the classroom. Matter of Superintendent of Schools v. Jacobs, *supra*, at p. 8.

The principal of Jamaica High School asserts in an affidavit filed in this case that permitting a student to remain seated during the Pledge could be "a real and present threat to the maintenance of discipline" and would be "pedagogically foolhardy." Other school administrators echo these words. For the purpose of the pending motions, these conclusory assertions are insufficient to support a finding of serious harm to defendants from the granting of an injunction.

■ Both suits are brought as class actions. The court finds that the questions of law presented are common to a substantial number of students in public junior and senior high schools who wish to remain in their seats in silence during the Pledge of Allegiance; that the plaintiffs will fairly and adequately protect the interests of the class; and that defendants have acted on grounds generally applicable to the entire class. F.R. Civ.P. Rule 23(b) (2).

### Legal Authorities

The thrust of recent decisions of the Supreme Court and lower federal courts has been toward increasing judicial concern with the clash between student expression and school authorities. This increasing concern has been accompanied by a shift in focus, well illustrated by comparing the Supreme Court's decision in West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), overruling Minersville School District v. Gobitis, 310 U.S. 586, 60 S.Ct. 1010, 84 L.Ed. 1375 (1940), with the recent decision in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The original concern with limitation of the state's power to compel a student to act contrary to his beliefs has shifted to a concern for affirmative protection of the student's right to express his beliefs. The present case is novel in that the context, school patriotic exercises, is one in which courts have previously intervened to limit coerced participation,

while these plaintiffs are urging not only a right of non-participation but a right of silent protest by remaining seated.

*Barnette* established the right of students to refrain from participation in a legislatively mandated flag ceremony. Rejecting compulsory participation as a proper vehicle for instilling patriotism, Mr. Justice Jackson stated (319 U.S. at 642, 63 S.Ct. at 1187):

> "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein."

Of pertinence to the present case, the opinion recognized that "The freedom asserted by these appellees does not bring them into collision with rights asserted by any other individual." 319 U.S. at 630, 63 S.Ct. at 1181. Justice Jackson also foreshadowed the present case by commenting that "liberty and justice for all," unless accepted merely as an ideal, "might to some seem an overstatement." 319 U.S. at 634, n. 14, 63 S.Ct. at 1183, n. 14.

Under the authority of *Barnette,* a federal district court held that a refusal to stand during the singing of the National Anthem did not justify exclusion from school. Sheldon v. Fannin, 221 F.Supp. 766 (D.Ariz.1963). However, *Barnette,* standing alone, might not be decisive of the present case. While Mr. Justice Jackson's opinion expressly disclaimed reliance on the religious beliefs of the plaintiffs, who were Jehovah's Witnesses, two of the six majority justices concurred on that basis. The plaintiffs in *Sheldon* were also Jehovah's Witnesses. In addition, neither *Barnette* nor *Sheldon* involved the alternative to participation of waiting outside the room; the choice was participation or exclusion from school.

The Supreme Court's decision in *Tinker* makes it unnecessary to explore further the differences between *Barnette* and the present case. *Tinker* held that public school students could not be suspended for wearing black arm-bands to protest American involvement in Vietnam, a form of silent expression in the classroom. While *Tinker* did not involve a refusal to participate in patriotic exercises in school, the Supreme Court did not tie its opinion to a particular set of facts, but enunciated a rule of general applicability. Mr. Justice Fortas stated (393 U.S. 509, 89 S.Ct. at 738):

> "In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly where there is no finding and no showing that the exercise of the forbidden right would '*materially and substantially interfere with the requirements of appropriate discipline* in the operation of the school,' the prohibition cannot be sustained. Burnside v. Byars, *supra,* 363 F.2d at 749." (Emphasis supplied.)

■ Emphasizing that no disorders had in fact occurred, Mr. Justice Fortas concluded (393 U.S. 514, 89 S.Ct. at 740–741):

> "These petitioners merely went about their ordained rounds in school. Their deviation consisted only in wearing on their sleeve a band of black cloth, not more than two inches wide. They wore it to exhibit their disapproval of the Vietnam hostilities and their advocacy of a truce, to make their views known, and by their example, to influence others to adopt them. They neither interrupted school activities nor sought to intrude in the school affairs or the lives of others. They caused discussion outside of the classrooms, but no interference with work and no disorder. In the circumstances, our Constitution does not permit officials of the State to deny their form of expression."

*Tinker* thus places on the school authorities the burden of justifying a particular

restriction on student expression. The student is free to select his form of expression, so long as he does not materially infringe the rights of other students or disrupt school activities.

The first quotation from the *Tinker* opinion is based upon Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966). That case sustained the right of students to wear "freedom buttons" where no disruption or commotion resulted. Also consistent with *Tinker* is the decision in Matter of Superintendent of Schools v. Jacobs, *supra*, which upheld the right of a public school teacher to remain seated and not participate in the Pledge of Allegiance. The teacher who raised the issue expressed sentiments like the plaintiffs' in this case, that liberty and justice do not yet exist for all Americans. The learned Trial Examiner, Bethuel M. Webster, former President of the Association of the Bar of the City of New York, stated that:

> "the Board is required under *Shelton* [Shelton v. Tucker, 364 U.S. 479 [81 S.Ct. 247, 5 L.Ed.2d 231] (1960)] and other cases to adopt means for promoting student patriotism that do not impair the personal liberties of teachers." Report, at p. 11.

Respondent advances no persuasive reason why the approach of *Tinker* should not be used here. Accordingly, it is not incumbent upon plaintiffs to convince the court that the offered alternative of leaving the room during the Pledge of Allegiance constituted punishment. Rather, respondent must convince the court that the particular expression of protest chosen by plaintiffs, remaining seated, materially infringed the rights of other students or caused disruption.

■ Supreme Court decisions involving the exercise of First Amendment rights in non-school contexts support plaintiffs' position here. In Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966), involving a sit-in in a segregated public library, the court stated that the right of free speech is not confined to verbal expression but includes

> "the right in a peaceable and orderly manner to protest by silent and reproachful presence, *in a place where the protestant has every right to be*." (Emphasis added.)

In Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 1366, 22 L.Ed.2d 572 (1969), Mr. Justice Harlan, one of the dissenters in *Tinker*, stated that the First Amendment provides "freedom to express publicly one's opinions about our flag, including those opinions which are defiant or contemptuous."

The draft-card burning case on which the City relies (United States v. Miller, 367 F.2d 72 [2d Cir. 1966]) is not comparable. Destruction of even trivial property is more than free speech. Of some similarity to the present case is a recent decision in another Circuit sustaining a mild penalty for a spectator's refusal to stand at the beginning of a court session. United States ex rel. Robson v. Malone, 412 F.2d 848 (7th Cir. 1969). The decision is not binding here and, in any event, is distinguished by the fact that a spectator's attendance in the courtroom is voluntary, while attendance in a public high school is compulsory.

■ Fear of disorder, which the City cites to justify its policy, has been ruled out as a ground for limiting peaceful exercise of First Amendment rights. Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963). The Supreme Court dealt with this argument again in *Tinker*, saying (393 U.S. at 508, 89 S.Ct. at 737):

> "The District Court concluded that the action of the school authorities was reasonable because it was based upon their fear of a disturbance from the wearing of the armbands. But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any

word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person, may start an argument or cause a disturbance. But our Constitution says we must take this risk * * *."

See also Tuttle, J., dissenting, in Ferrell v. Dallas Independent School District, 392 F.2d 697, 705–706 (5th Cir. 1968); In re Peck, 38 L.W. 2285 (N.Y.App.Div. 4th Dept., Oct. 30, 1969) (holding that judge cannot forbid female attorney to wear miniskirt because of fear of distraction or disruption).

■ Pedagogical opinions, or appeals to courtesy, are also inadequate grounds for coercive responses to First Amendment expressions.

■■ Certainly, the fact that others have joined the plaintiffs in sitting out the Pledge is no justification for impeding plaintiffs' protests. The First Amendment protects successful dissent as well as ineffective protests.

This does not mean that the court has created an open season for students to defy authority. The same panel of the same court which upheld the wearing of "freedom buttons" in *Burnside, supra,* 363 F.2d 744, also held that the right to wear the buttons was forfeited where the button-wearers harassed other students and created a disturbance. Blackwell v. Issaquena County Board of Education, 363 F.2d 749 (5th Cir. 1966).

Madera v. Board of Education, 386 F.2d 778 (2d Cir. 1967), which defendants cite, dealt with the right to counsel at a guidance conference, and has no bearing on the present case.

President Harold C. Martin of Union College recently called attention to the emotions which are aroused by a case like this:

"The refusal of some religious sects today to swear an oath of allegiance to the flag infuriates many citizens who find themselves unable to consent to a set of principles different from the one they hold." The Meaning of

"Law and Order," 74 Case & Comment, Nov.-Dec., 1969, p. 45 at p. 46.

The policy of the New York City Board of Education is a sincere attempt to prevent disorders which may develop as the reaction of infuriated members of the majority to the silent dissent expressed by plaintiffs. The flaw in the policy is that the constitution does not recognize fears of a disorderly reaction as ground for restricting peaceful expression of views. As the court said in *Tinker:*

"Freedom of expression would not truly exist if the right could be exercised only in an area that a benevolent government has provided as a safe haven for crackpots." (393 U.S. at 513, 89 S.Ct. at 740).

*Preliminary Injunction*

On the basis of the facts and legal authorities, the court is satisfied that plaintiffs have a strong possibility of ultimate success on the merits, that the grant of a preliminary injunction will cause no appreciable harm to defendants, and that denial of an injunction would be prejudicial to plaintiffs.

■ New rules adopted by the Board of Education since the argument of these motions would limit the Board's power of suspension, but do not affect the court's jurisdiction of this action.

It is therefore ordered

(1) That the two cases be consolidated under the caption of 69 Civil 1250;

(2) That the consolidated case may be maintained as a class action under F.R.Civ.P. 23(b) (2);

(3) That defendants' motions to dismiss be denied, with leave to answer pursuant to F.R.Civ.P. 12(a); and

(4) That defendants be enjoined during the pendency of this action from excluding plaintiffs from their classrooms during the Pledge of Allegiance, or from treating any student who refuses for reasons of conscience

to participate in the Pledge in any different way from those who participate.

After defendants' answer is filed, any party may apply to the court for a prompt hearing on the merits.

Any party may apply for a more detailed injunction order, on notice, if deemed desirable.