**Stefan Ray ARONOW, Plaintiff-Appellant,**

v.

**UNITED STATES of America et al., Defendants-Appellees.**

**No. 23444.**

United States Court of Appeals, Ninth Circuit.

Oct. 6, 1970.

Stefan Ray Aronow (argued), in pro. per.

Raymond D. Battocchi (argued), Robt. V. Zener, Attys., William D. Ruckelshaus, Asst. Atty. Gen., Civil Division, Dept. of Justice, Washington, D. C., James L. Browning, U. S. Atty., San Francisco, Cal., for appellee.

Before DUNIWAY and CARTER, Circuit Judges, and THOMPSON,* District Judge.

---

4. See In re McGann Co., *supra* 188 F.2d at 112, cited with approval in In re Solar Mfg. Corp., *supra* 190 F.2d at 274.

* Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation.

THOMPSON, District Judge:

This is an appeal from the orders of the District Court refusing to invoke a three-judge court and dismissing plaintiff's complaint. The complaint challenged the use of expressions of trust in God by the United States Government on its coinage, currency, official documents and publications. Specifically, the action challenged the constitutionality as repugnant to the Establishment Clause of the First Amendment of two federal statutes:

> "At such time as new dies for the printing of currency are adopted, the dies shall bear, at such place or places thereon as the Secretary of the Treasury may determine to be appropriate, the inscription 'In God we Trust,' and thereafter this inscription shall appear on all United States currency and coins." 31 U.S.C. § 324a.

> "The national motto of the United States is declared to be 'In God we trust.'" 36 U.S.C. § 186.

The District Court ruled that plaintiff, as a taxpayer and citizen, lacked standing to challenge the validity of the statutes and that the merits of the claim of unconstitutionality were insubstantial. Inasmuch as we agree on the insignificance of the charge of unconstitutionality, we do not reach the question of standing.

■ A three-judge court need not be convened under 28 U.S.C. § 2282 unless there are substantial grounds for attacking the constitutionality of the Congressional enactment in question. Ex Parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L. Ed. 152 (1933); Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 332 (1962).

■ It is quite obvious that the national motto and the slogan on coinage and currency "In God We Trust" has nothing whatsoever to do with the establishment of religion. Its use is of a patriotic or ceremonial character and bears no true resemblance to a governmental sponsorship of a religious exercise.

In Engel v. Vitale, 370 U.S. 421, 82 S. Ct. 1261, 8 L.Ed.2d 601 (1962), the Supreme Court held that the Regents' Prayer prescribed by state statute as part of the daily ceremony for opening school was definitely a religious activity falling under the prohibition of the First Amendment. Yet, in alluding to the distinction between this and purely patriotic or ceremonial expressions, the High Court said:

> "There is of course nothing in the decision reached here that is inconsistent with the fact that school children and others are officially encouraged to express love for our country by reciting historical documents such as the Declaration of Independence which contain references to the Deity or by singing officially espoused anthems which include the composer's professions of faith in a Supreme Being, or with the fact that there are many manifestations in our public life of belief in God. Such patriotic or ceremonial occasions bear no true resemblance to the unquestioned religious exercise that the State of New York has sponsored in this instance."

It is not easy to discern any religious significance attendant the payment of a bill with coin or currency on which has been imprinted "In God We Trust" or the study of a government publication or document bearing that slogan. In fact, such secular uses of the motto was viewed as sacrilegious and irreverent by President Theodore Roosevelt. Yet, Congress has directed such uses.[1] While "ceremonial" and "patriotic" may not be particularly apt words to describe the category of the national motto, it is excluded from First Amendment significance because the motto has no theological or ritualistic impact.[2] As stated by the

---

1. Church and State in the United States, Stokes & Pfeffer, p. 569.

2. "Separation purists like Jefferson might have theoretic objections to these, but even

Congressional report, it has "spiritual and psychological value" and "inspirational quality." [3]

Not only does Engel v. Vitale, *supra,* direct the result here, but McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), buttresses the position. There the Maryland Sunday laws were held not violative of the Establishment Clause, and the majority opinion concluded: "We do not hold that Sunday legislation may not be a violation of the 'Establishment' Clause if it can be demonstrated that its purpose—evidenced either on the face of the legislation, in conjunction with its legislative history, or in its operative effect—is to use the State's coercive power to aid religion." As we have seen, the national motto has no such purpose, either in Congressional intent or practical impact on society. And earlier this year, in Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), the High Court, holding tax exemption of religious organizations constitutional reiterated the *McGowan* philosophy, at pp. 669–670, 90 S.Ct. at p. 1411–1412.

"The course of constitutional neutrality in this area cannot be an absolutely straight line; rigidity could well defeat the basic purpose of these provisions, which is to insure that no religion be sponsored or favored, none commanded, and none inhibited. The general principle deducible from the First Amendment and all that has been said by the Court is this: that we will not tolerate either governmentally established religion or governmental interference with religion. Short of those expressly proscribed governmental acts there is room for play in the joints productive of a benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference.

"*Each value judgment under the Religion Clauses must therefore turn on whether particular acts in question are intended to establish or interfere with religious beliefs and practices or have the effect of doing so.* Adherence to the policy of neutrality that derives from an accommodation of the Establishment and Free Exercise Clauses has prevented the kind of involvement that would tip the balance toward government control of churches or governmental restraint on religious practice." (Emphasis added.)

Accordingly, the judgment of the District Court is affirmed.

he recognized that as a practical matter such ceremonial verbalizations could frequently not be avoided; both his Declaration of Independence and his Virginia Religious Freedom statute invoked God. The problems raised by such references are not intrinsic but extrinsic; that is, of themselves they are of no practical significance, but their importance lies in their facile and frequent use to justify practices that raise substantial and practical church-state problems." Church State and Freedom, Pfeffer, p. 238.

3. "Currency has been issued by the United States Government since 1861. Thus, for almost a century, there has been no inscription on our currency reflecting the spiritual basis of our way of life." Senate Report No. 637, 1955 Cong. & Admin. News, p. 2417.

"It will be of great spiritual and psychological value to our country to have a clearly designated national motto of inspirational quality in plain, popularly accepted English." House Report No. 1959, 1956 Cong. & Admin.News, p. 3720.