Robert SHERMAN, for himself and as natural guardian for his son, Richard Sherman, and the Society of Separationists, Inc., Plaintiffs,

v.

COMMUNITY CONSOLIDATED SCHOOL DISTRICT 21 OF WHEELING TOWNSHIP, School District Superintendent Lloyd Descarpentrie, and Principal Ferne Garrett, Defendants.

No. 88 C 9205.

United States District Court, N.D. Illinois, E.D.

May 12, 1989.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The plaintiffs Robert Sherman, for himself and as natural guardian for his son, Richard Sherman, and the Society of Separationists, Inc. bring this complaint pursuant to 42 U.S.C. § 1983 alleging that the defendants Community Consolidated School District 21 of Wheeling Township, School District Superintendant Lloyd Descarpentrie, and Principal Ferne Garrett violated their rights under the First and Fourteenth Amendments. The plaintiffs also challenge the constitutionality of Ill.Rev.Stat. ch. 122, ¶ 27–3 (1980). The defendants move to dismiss the plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The defendants' motion is denied for the following reasons.

### I

#### Rule 12(b)(6)

When ruling on this motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court will "take the allegations in the complaint to be true and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff[s]." *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). A complaint should be dismissed only when "it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle plaintiff to relief." *Id.* In addition, a "court must construe [*pro se*] pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss."[1] *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988) (*pro se* complaints must be read liberally). Finally, the court notes that "in

'complex cases involving fundamental rights and important questions of public policy, such peremptory treatment [as dismissal] is rarely appropriate.' " *DeMallory v. Cullen,* 855 F.2d 442, 445 (7th Cir. 1988), *quoting Rutan v. Republican Party of Illinois,* 848 F.2d 1396, 1414 (7th Cir. 1988) (Ripple, J., concurring in part, dissenting in part).

### II

#### Facts

The pertinent facts as alleged in the complaint are as follows. Richard Sherman is a first grade student at James Whitcomb Riley Public Elementary School. At 9:05 a.m. Principal Garrett "addresses all classrooms on an intercom system telling them to:

> Please rise for the all-school pledge. I pledge allegiance to the flag of the United States of America and to the republic for which it stands, one nation under God, indivisible, with liberty and justice for all.

Richard is publically asked to stand, put one hand over his heart, and perform this ceremony. Complaint, ¶ 5. The Shermans, who are practicing atheists, are members of the Society of Separationists. The Society is a Maryland corporation licensed to do business in Illinois. The Society "has played a historical role in Church/State separation[,] government-coerced observances and other United States Constitutional issues for many years." *Id.* at ¶ 4.

### III

#### Standing

■ The defendants move to dismiss the complaint on a variety of grounds. The defendants first contend that the Society does not have standing to pursue this action as a party plaintiff on its own behalf.[2]

---

1. The plaintiffs were proceeding *pro se* when they drafted and filed their complaint. Although they have now obtained counsel, the initial complaint was not amended by counsel. Consequently, the court will continue to give the plaintiffs' complaint the solicitude accorded to *pro se* pleadings.

2. When ruling on this motion to dismiss for want of standing, this court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

They are correct. The Society itself is not in a position to assert those rights, claimed to be constitutionally protected, which the statute curtails. *Cf. N.A.A.C.P. v. Button,* 371 U.S. 415, 428, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963). The Society, therefore, does not suffer the actual or threatened injury required to make out a case or controversy between itself and the defendants within the meaning of Article III. *See Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *FMC Corp. v. Boesky,* 852 F.2d 981, 987 (7th Cir.1988). However, the above conclusion does not foreclose the possibility that the Society may be able to bring suit on behalf of its members injured by the challenged conduct. The Society may bring suit on behalf of its members if

> (a) its membership would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *Freedom From Religion Foundation, Inc. v. Zielke,* 845 F.2d 1463, 1467 (7th Cir. 1988).

Given the bare bones nature of the complaint, the court is unable to determine whether the Society has standing to pursue claims on behalf of its membership at this juncture. While it is clear that at least two members of the Society, the Shermans, would have standing to sue in their own right,[3] they are already doing so. It is not clear whether any other Society members would have standing to sue as a consequence of suffering actual or threatened injuries. *Cf. O'Hair v. White,* 675 F.2d 680, 691 (5th Cir.1982) (Society has standing to sue under a claim where *every* member suffers an individual injury to a fundamental right). In addition, the plaintiffs request, among other things, damages for mental distress and humiliation and punitive damages. This type of relief requires the participation of the individuals who have been harmed. *See Hunt,* 432 U.S. at 333, 97 S.Ct. at 2434 (an association may properly pursue declaratory, injunctive, or some other form of prospective relief on behalf of its membership). The plaintiffs will be given twenty-one (21) days from the entry of this order to conform their complaint to this court's ruling. The Society is directed to supplement the amended complaint with factual allegations pertinent to the standing question. *See Warth,* 422 U.S. at 501, 95 S.Ct. at 2206. The court will determine whether the Society has standing to pursue this action on behalf of its members after the amended complaint is filed.

## IV

### Establishment Clause

■ The plaintiffs contend that Ill.Rev. Stat. ch. 122, ¶ 27–3 violates the Establishment Clause of the First Amendment.[4] The third clause of the statute provides that

> The Pledge of Allegiance shall be recited each school day by pupils in elementary educational institutions supported or maintained in whole or in part by public funds.

Ill.Rev.Stat. ch. 122, ¶ 27–3. "The Establishment Clause ... does not depend upon any showing of direct government compulsion and is violated by the enactment of laws which establish an official religion

---

**3.** *See School District of Abington Township v. Schempp,* 374 U.S. 203, 224 n. 9, 83 S.Ct. 1560, 1572 n. 9, 10 L.Ed.2d 844 (1963).

**4.** The First Amendment of the Constitution provides in pertinent part that

> Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof;

The Establishment and Free Exercise Clauses have been made applicable to the states through the Fourteenth Amendment. *Abington,* 374 U.S. at 215, 83 S.Ct. at 1567; *Edwards v. Aguillard,* 482 U.S. 578, 582 n. 3, 107 S.Ct. at 2576 n. 3 (1987).

whether these laws operate directly to coerce nonobserving individuals or not." *Engel v. Vitale*, 370 U.S. 421, 430, 82 S.Ct. 1261, 1267, 8 L.Ed.2d 601 (1962). In *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Supreme Court developed a "three-prong test to determine whether legislation comports with the Establishment Clause." *Edwards v. Aguillard*, 482 U.S. 578, 583, 107 S.Ct. 2573, 2577, 96 L.Ed.2d 510 (1987). The *Lemon* test is as follows:

> First, the legislature must have adopted the law with a secular purpose. Second, the statute's principal or primary effect must be one that neither advances nor inhibits religion. Third, the statute must not result in an excessive entanglement of government with religion.

*Id., quoting Lemon*, 403 U.S. at 612–13, 91 S.Ct. at 2111. The state's action must satisfy each prong of the test. *Id.*

The court cannot apply the *Lemon* test when resolving this motion to dismiss because an application of the test would involve the court's consideration of matters outside of the pleadings. *See, e.g., Edwards*, 482 U.S. at 587, 107 S.Ct. at 2579 (legislative history is considered). However, the failure of the plaintiffs' Establishment Clause claim is all but a foregone conclusion. Several courts have expressly found that the Pledge of Allegiance may be recited in public schools without violating the Establishment Clause. *See Lanner v. Wimmer*, 662 F.2d 1349, 1354 (10th Cir. 1981) ("while public schools may conduct patriotic ceremonies such as the pledge of allegiance, they may not compel participation by children who object on free exercise grounds"); *Smith v. Denny*, 280 F.Supp. 651, 653–54 (E.D.Ca.1968), *appeal dismissed*, 417 F.2d 614 (9th Cir.1969); *Gavin v. Peoples Natural Gas Co.*, 464 F.Supp. 622, 627 (W.D.Pa.1979), *vacated on other grounds*, 613 F.2d 482 (3d Cir.1980) (citing *Smith*). In *Smith*, the court characterized the Pledge as a "patriotic exercise[ ] containing ancillary references to God." *Smith*, 280 F.Supp. at 653.

Other courts have found that the inclusion of the phrase "In God We Trust" on coinage and currency does not violate the Establishment Clause. *See Aronow v. United States*, 432 F.2d 242, 243 (9th Cir. 1970); *Hall v. Bradshaw*, 630 F.2d 1018, 1022 (4th Cir.1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1480, 67 L.Ed.2d 613 (1981) ("References to the Deity in our ceremonies and our coinage and seals do not violate the Establishment Clause because they merely reflect this fact of our history and no longer have any potentially entangling theological significance.") In *Aronow*, the Ninth Circuit stated that

> [i]t is quite obvious that the national motto and slogan on coinage and currency 'In God We Trust' has nothing whatsoever to do with the establishment of religion. Its use is of a patriotic or ceremonial character and bears no true resemblance to government sponsorship of a religious exercise.

*Aronow*, 432 F.2d at 243. Another court held that the singing of the National Anthem by public school children does not violate the Establishment Clause. *Sheldon v. Fannin*, 221 F.Supp. 766, 774 (D.Ariz. 1963). In the course of resolving the issue, the court noted that

> [t]he singing of the National Anthem is not a religious but a patriotic ceremony, intended to inspire devotion to and love of country. Any religious references therein are incidental and expressive only of the faith which as a matter of historial fact has inspired the growth of the nation.

*Id.*

Finally, although the Supreme Court has not expressly ruled on this question, the Court has strongly intimated that the recitation of the Pledge by public school students does not violate the Establishment Clause. The Court has repeatedly noted that "[w]e are a religious people whose institutions presuppose a Supreme Being." *Zorach v. Clauson*, 343 U.S. 306, 313, 72 S.Ct. 679, 684, 96 L.Ed. 954 (1952); *Lynch v. Donnelly*, 465 U.S. 668, 675, 104 S.Ct. 1355, 1360, 79 L.Ed.2d 604 (1984). Moreover, "[t]here is an unbroken history of official acknowledgement by all three branches of government of the role of reli-

gion in American life from at least 1789." *Lynch,* 465 U.S. at 674, 104 S.Ct. at 1359. In *Lynch,* the Supreme Court listed a series of constitutionally permissible acknowledgements of the role of religion in American life. *See Van Zandt v. Thompson,* 839 F.2d 1215, 1221 (7th Cir.1988) (citing to *Lynch,* 465 U.S. at 676–78, 104 S.Ct. at 1360–62). The Pledge was one of the acknowledgements listed. *Lynch,* 465 U.S. at 676, 104 S.Ct. at 1361. The Court explicitly noted how the Pledge incorporated the phrase "One Nation Under God" and is "recited by many thousands of public school children—and adults—every year." *Id.* The Court has expressed its implicit approval of the Pledge in other cases as well. *See Engel,* 370 U.S. at 435 n. 21, 82 S.Ct. at 1269 n. 21; *Abington,* 374 U.S. at 281, 303–04, 83 S.Ct. at 1614 (Brennan, J., concurring) ("The reference to divinity in the revised pledge of allegiance ... may merely recognize the historical fact that our Nation was believed to be founded 'under God.'")

The plaintiffs attempt to rebut this array of cases by attacking the underlying reasoning of some of the decisions. The court is unpersuaded by their contentions. Furthermore, the plaintiffs have cited *no* other case law in support of their claimed Establishment Clause violation. If the plaintiffs choose to press this claim in their amended complaint, the court will apply the *Lemon* test.

## V

### *Free Exercise Clause*

■ The plaintiffs also contend that Ill. Rev.Stat. ch. 122, ¶ 27–3 violates the Free Exercise Clause by compelling Richard Sherman to recite the Pledge of Allegiance. The court finds that this claim is meritorious. "The Free Exercise Clause affords an individual protection from certain forms of government compulsion." *Bowen v. Roy,* 476 U.S. 693, 700, 106 S.Ct. 2147, 2152, 90 L.Ed.2d 735 (1986); *Mozert v. Hawkins County Board of Education,* 827 F.2d 1058, 1070 (6th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988); *see also Abington,* 374 U.S. at 223,

83 S.Ct. at 1572 (Free Exercise Clause requires compulsion). In the seminal case *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), the Supreme Court found that the compulsory flag salute and pledge required by local authorities was unconstitutional. The Court stated that

[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion or other matters of opinion or force citizens to confess by word or act their faith therein.

*Id.* at 642, 63 S.Ct. at 1187. The local authorities "transcend[ed] constitutional limitations on their power" by imposing the compulsory flag salute and pledge. *Id.* The holding in *Barnette* has been applied and reaffirmed by numerous lower courts. *See, e.g., Mozert,* 827 F.2d at 1066; *Lanner,* 662 F.2d at 1354; *Lipp v. Morris,* 579 F.2d 834, 835–36 (3d Cir.1978); *Goetz v. Ansell,* 477 F.2d 636, 637–39 (2d Cir.1973); *Frain v. Baron,* 307 F.Supp. 27, 31–34 (E.D.N.Y.1969).

The defendants do not, and indeed cannot, challenge the above legal principles. Instead, they attempt to distinguish this case from *Barnette* on the grounds that Richard Sherman was not compelled to recite the Pledge. The defendants' argument is flawed for several reasons. First, the factual allegations of the complaint are sufficient in themselves to suggest compulsion. Robert Sherman, a first grader, must attend school under Illinois law. He is told to stand, put one hand over his heart, and recite the Pledge by his principal each morning. As the Supreme Court has noted, school children are impressionable and often susceptible to social influence. *See School District of the City of Grand Rapids v. Ball,* 473 U.S. 373, 383, 105 S.Ct. 3216, 3222, 87 L.Ed.2d 267 (1985); *Abington,* 374 U.S. at 288–90, 291 n. 69, 83 S.Ct. at 1606–07, 1608 n. 69 (Brennan, J., concurring) ("[i]t is also apparent that the susceptibility of school children to prestige suggestion and social influence within the school environment varies inversely with

the age, grade level, and consequent degree of sophistication of the child.") The command of his principal along with fears of "embarrassment, potential loss of business associations (Robert), friends and other sanctions/penalties" compel Richard to recite the Pledge. Complaint, ¶¶ 7–9; *see also Abington,* 374 U.S. at 290, 83 S.Ct. at 1607 (Brennan, J., concurring) ("even devout children may well avoid claiming their right and simply continue to participate in exercises distasteful to them because of an understandable reluctance to be stigmatized as atheists or nonconformists.")

Moreover, the statute requires pupils to recite the Pledge in clear and unambiguous prose. Thus, the statutory terms are coercive. *Cf. Bowen,* 476 U.S. at 704, 106 S.Ct. at 2154 (statute that requires the submission of a social security number as a prerequisite for obtaining benefits is compulsive.) The defendants contend that the legislature's failure to include sanctions for non-compliance renders the statute non-compulsive. The plaintiffs, however, note that Illinois law allows school boards to suspend or expel pupils for misconduct. *See* Ill.Rev.Stat. ch. 122, ¶ 10–22.6. While "misconduct" is not explicitly defined, the failure to obey the express command of a state statute would seem to fall within any definition of the term. As a result, it is conceivable that the younger Sherman could be punished under Illinois law for his failure to comply with the statute. The defendants also contend that Richard has always been free to remain seated quietly at his desk during the recitation of the Pledge. The court will not consider this assertion because it is, quite naturally, not included in the plaintiffs' complaint. Furthermore, the statute by implication negates any such right. Consequently, the court finds that the plaintiffs have stated a claim for violation of the Free Exercise Clause.

## VI

### *Equal Protection Clause*

■ The plaintiffs further challenge Ill. Rev.Stat. ch. 122, ¶ 27–3 on the grounds that it violates the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause "provides that no State shall 'deny any person within its jurisdiction equal protection of the law.'" *Faheem-El v. Klincar,* 841 F.2d 712, 727 (7th Cir.1988), *quoting* U.S. Const.Amend. XIV. When making its equal protection analysis, this court must first determine whether the state legislation "infringes upon a fundamental right or discriminates on the basis of a suspect category." *Id.* In this case, the plaintiffs assert that the statute infringes on their First Amendment rights. As stated above, the court has found that the challenged statute may violate the plaintiffs' rights as guaranteed by the Free Exercise Clause. "When State laws impinge on personal rights protected by the Constitution," they may be "sustained only if they are suitably tailored to serve a compelling state interest." *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Attorney General of New York v. Soto-Lopez,* 476 U.S. 898, 904, 906 n. 6, 106 S.Ct. 2317, 2322, n. 6, 90 L.Ed.2d 899 (1986); *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969); *see also Salem Inn, Inc. v. Frank,* 522 F.2d 1045, 1049 (2d Cir.1975) (Strict scrutiny applicable when an ordinance burdens First Amendment expression rights). Thus, the plaintiffs' equal protection challenge may also be meritorious and will not be dismissed.

## VII

### *Punitive Damages*

■ The defendants move to strike the plaintiffs' prayer for punitive damages pursuant to Federal Rule of Civil Procedure 12(f). The defendants' motion is granted for the following reasons. Under Illinois law, "punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfuly, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 384 N.E.2d 353, 359 (Ill.1978). In addition, "the preliminary question of

whether the facts of a particular case justify the imposition of punitive damages is properly one of law." *Id.; West v. Western Casualty and Surety Co.,* 846 F.2d 387, 398 (7th Cir.1988). In this case, there are no allegations which indicate that the defendants acted in a sufficiently egregious manner as to warrant the imposition of punitive damages.[5] Consequently, the plaintiffs' prayer for punitive damages will be stricken.

## VIII

### *Qualified Immunity*

The defendants Descarpentrie and Garrett also move for dismissal of the action against them in their individual capacities on the grounds that they are entitled to good faith immunity from liability. Qualified immunity, as an affirmative defense, will be an appropriate ground for dismissal if it "clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir.1984), *adhered to,* 764 F.2d 1400 (11th Cir.1985) (en banc), *cert. denied,* 476 U.S. 1124, 106 S.Ct. 1992, 90 L.Ed.2d 673 (1986); *Rakovich v. Wade,* 850 F.2d 1180, 1204 (7th Cir.) (en banc), *cert. denied,* — U.S. —, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988) (qualified immunity is an affirmative defense). The defendants' qualified immunity defense does not appear on the face of the complaint. Moreover, qualified immunity determinations are more appropriately made in the summary judgment context. *Rakovich,* 850 F.2d at 1205–06. Accordingly, the court will resolve the immunity issue in the context of the parties' summary judgment motions.

### *Conclusion*

For the foregoing reasons, the court denies the defendants' motion to dismiss. The plaintiffs are given twenty-one (21) days from the entry of this order to amend their complaint to supplement and focus their factual allegations.

---

5. The court notes that the defendant school district, a quasi-municipal corporation, would be immune from punitive damages in any event. *People v. Furman,* 26 Ill.2d 334, 186 N.E.2d 262, 263 (Ill.1962) (School districts are quasi-municipal corporations); *People v. Wood,* 411 Ill. 514, 104 N.E.2d 800, 805 (Ill.1952) (same); *People v. Deatherage,* 401 Ill. 25, 81 N.E.2d 581, 592 (Ill. 1948) ("A school district is a quasi-municipal corporation, and analogous to any other municipal corporation created under legislative enablement laws.") *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981) (Municipal corporations are immune from punitive damages).