DAVID A. NELSON, Circuit Judge, dissenting.
In 1956 Congress enacted a law, now codified at 36 U.S.C. § 302, declaring the national motto to be “In God we trust.” Three of our sister circuits have upheld the constitutionality of this federal statute against claims that it violates the First Amendment as a “law respecting an establishment of religion.... ” Aronow v. United States, 432 F.2d 242 (9th Cir.1970); O’Hair v. Murray, 588 F.2d 1144 (5th Cir.), cert. denied, 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979); Gaylor v. United States, 74 F.3d 214 (10th Cir.), cert. denied, 517 U.S. 1211, 116 S.Ct. 1830, 134 L.Ed.2d 934 (1996). The Supreme Court has never questioned the conclusion reached in these decisions.
In 1959 the Ohio legislature enacted a law adopting “With God All Things Are Possible” as the official motto of the state. See Ohio Rev.Code § 5.06. The Fourteenth Amendment makes the Establishment Clause of the First Amendment applicable to the states, but the Supreme Court has told us that “it would be incongruous to interpret that Clause as imposing more stringent First Amendment limits on the states than the draftsmen imposed on the Federal Government.” Marsh v. Chambers, 463 U.S. 783, 790-91, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983). This being so, and assuming (as I do) that the national motto is not unconstitutional, I am led to the question whether there is such a pronounced difference between “In God we trust” and “With God All Things Are Possible” that adoption of the latter declaration as a motto must be held to violate the Establishment Clause notwithstanding that adoption of the former is constitutionally permissible.
To a reasonable observer who did not happen to be a biblical scholar, it seems to me, “In God we trust” and ‘With God All Things Are Possible” would appear remarkably similar.[1] A person exceptionally well versed in the Bible, on the other hand, might be aware that the declaration about trusting in God harkens back to the pre-Christian Old Testament (see Psalms 56:11), while the declaration about all things being possible with God is part of a statement that the Christian New Testament attributes to Jesus in a context unique to Christianity. See Matthew 19:26.
I do not quarrel with the proposition that a government motto would be unconstitutional, under our current understanding of the Establishment Clause, if a hypothetical “reasonable observer” would take Ohio’s motto to be an official endorsement of the Christian religion. I do not understand, however, why the observer should be deemed to be omniscient as well as reasonable. All that is suggested by the adjective “reasonable,” I believe, is an observer who is an “informed member of the community” and who is “aware of the history and context of the community and forum” in which the challenged expression appears. See Capitol Square Review and Advisory Board v. Pinette, 515 U.S. 753, 780-81, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995) (O’Connor, J., concurring) (emphasis supplied). Such an observer should not, I think, be presumed to have an encyclopedic knowledge of the Old and New Testaments. “There is always someone who, with a particular quantum of knowledge, reasonably might perceive a particular action as an endorsement of religion,” as Justice O’Connor observed in her Capitol Square opinion, id. at 780, 115 S.Ct. *731 2440, but that exceptional “someone” is not our reasonable observer.
If I am correct in my understanding of the test, I do not believe that a reasonable observer in Ohio would find “With God All Things Are Possible” significantly more problematic than “In God we trust.” I confess that prior to this lawsuit I could not have identified the source of either motto, and I doubt that it is vanity alone which prompts me to suggest that my ignorance is far from atypical.
If I am wrong in thinking that the reasonable observer need not be omniscient, on the other hand, it is by no means clear to me that an omniscient observer would recognize that our national motto is not an endorsement of Judaism but would conclude that Ohio’s motto is nonetheless an endorsement of Christianity. Such an observer — completely familiar with the long tradition of “ceremonial deism” described in the majority opinion would reasonably conclude, I believe, that both the Ohio motto and the national motto fit comfortably within that tradition.
An omniscient observer would know that Ohio’s motto law (Ohio Rev.Code § 5.06) is codified in the same chapter as statutes designating the state wild flower (Ohio Rev.Code § 5.021), the official state bird (Ohio Rev.Code § 5.03), the official state animal (Ohio Rev.Code § 5.032), the state coat of arms (Ohio Rev.Code § 5.04), the official state tree (Ohio Rev.Code § 5.05), the official state gem stone (Ohio Rev. Code § 5.07), the official state invertebrate fossil (Ohio Rev.Code § 5.071), the official state beverage (Ohio Rev.Code § 5.08), and the state song (Ohio Rev.Code § 5.09). The statutory context hardly suggests that the challenged law involves an establishment of religion.
Accordingly, and for substantially all of the reasons given by the district court in its scholarly and thoughtful opinion, American Civil Liberties Union of Ohio v. Capital Square Review and Advisory Board, 20 F.Supp.2d 1176 (S.D.Ohio 1998), I would affirm the holding that Ohio has not acted unconstitutionally.[2]

. The concurring opinion suggests that a reasonable observer would understand that the God of whom the national motto speaks could be a mere golden calf, while the God of whom the state motto speaks could not. The distinction, it seems fair to say, is one that would not leap readily to the minds of most observers.

. The concurring opinion prompts me to add that if the constitutionality of Ohio's motto were to be decided according to the intent of the Framers of the Establishment Clause, this would be a very easy case indeed. The evidence marshalled by the district court at 20 F.Supp.2d at 1183-85 makes it obvious, I think, that the Framers themselves would not have dreamed that the adoption of Ohio’s religiously-oriented motto could be thought to constitute an "establishment of religion.” In an action no less "political” than the adoption of the national and state mottos, for example, the Congress that gave us the First Amendment called upon President Washington to proclaim — as he did — "a day of public thanksgiving and prayer, to be observed by acknowledging with grateful hearts the many and signal favours of Almighty God.” Id. at 1181 (citation omitted).
" ‘Establishment of religion,’ as the term was used in the days of the Founders, connoted such things as the payment of clerical salaries by the state, the governmental prescription of articles of faith, the imposition of religious tests for office, and the official endorsement of particular forms of worship.” American Civil Liberties Union v. City of Birmingham, 791 F.2d 1561, 1568-69 (6th Cir.) (Nelson, J., dissenting), cert. denied, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). James Madison — "the draftsman of and the guiding hand behind the First Amendment,” as the concurring opinion accurately describes him — said during the debates of the First Congress that led up to the adoption of the Establishment Clause that "he apprehended the meaning of the words to be, that Congress should not establish a religion, and enforce the legal observation of it by law, nor compel men to worship God in any manner contrary to their conscience.” 1 Annals of Cong. 730 (1789), as quoted in Wallace v. Jaffree, 472 U.S. 38, 95, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (Rehnquisl, J., dissenting). Ohio’s motto comes nowhere close to doing this.
My problem, of course, is that within my lifetime there has been a radical evolution in judicial thinking on what the Establishment *732 Clause proscribes. Justice Rehnquist, as he then was, alluded in his Wallace dissent to a "mischievous diversion of judges from the actual intentions of the drafters of the Bill of Rights.” Id. at 107, 105 S.Ct. 2479. Mischievous or not, the diversion is an obvious fact.
To say precisely how far the diversion from the Founders' intentions has progressed calls for powers of analysis — or divination — that I do not possess. If the spirit that animated the Supreme Court’s decision in Marsh v. Chambers were to guide us here, we would decide the present case in accordance with the original understanding of the phrase “an establishment of religion.” But I readily acknowledge that the Marsh approach is not one that has been followed consistently — and that is why I have chosen to rest mainly on the proposition that if the national motto is constitutional, Ohio’s motto is constitutional too. This may be simplistic, but I hope it at least has the virtue of being comprehensible.