In the

# United States Court of Appeals
### For the Seventh Circuit

No. 06-1993

DEBORAH A. MAYER,

*Plaintiff-Appellant,*

*v.*

MONROE COUNTY COMMUNITY
SCHOOL CORPORATION, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:04-CV-1695-SEB-VSS—**Sarah Evans Barker**, *Judge.*

ARGUED DECEMBER 1, 2006—DECIDED JANUARY 24, 2007

Before EASTERBROOK, *Chief Judge*, and RIPPLE and
MANION, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Deborah Mayer worked
for one year as a probationary elementary-school teacher
in Monroe County, Indiana. When the school district did
not renew her contract for a second year, Mayer filed this
suit under 42 U.S.C. §1983, maintaining that the school
system let her go because she took a political stance dur-
ing a current-events session in her class, thus violating
the first amendment. The district court granted summary
judgment to the defendants, so we must accept Mayer's
version of events—which is that she answered a pupil's
question about whether she participated in political

demonstrations by saying that, when she passed a demonstration against this nation's military operations in Iraq and saw a placard saying "Honk for Peace", she honked her car's horn to show support for the demonstrators. Some parents complained, and the school's principal told all teachers not to take sides in any political controversy. Mayer believes that this incident led the school system to dismiss her; we must assume that this is so.

The district court concluded that, because military intervention in Iraq is an issue of public importance, Mayer had a right to express her views on the subject, but that the right is qualified in the workplace by the requirement that expression not disrupt an employer's business unduly. This is the method of *Pickering v. Board of Education*, 391 U.S. 563 (1968). After concluding that the employer's interests predominate, the district court gave judgment for the defendants. Mayer contends on appeal that the balance under *Pickering* weighs in her favor. For their part, defendants contend that interest balancing plays no role when the speech in question is part of the employee's official duties. See *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1960 (2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."); *Mills v. Evansville*, 452 F.3d 646 (7th Cir. 2006). Mayer concedes that the current-events session, conducted during class hours, was part of her official duties; if *Garcetti* supplies the rule of decision, then the school district prevails without further ado. Mayer insists, however, that principles of academic freedom supersede *Garcetti* in classrooms, and she relies on a statement in *Piggee v. Carl Sandburg College*, 464 F.3d 667, 672 (7th Cir. 2006), that *Garcetti* was "not directly relevant" to the college instructor's speech in that case.

Whether teachers in primary and secondary schools have a constitutional right to determine what they say in class is not a novel question in this circuit. We held in *Webster v. New Lenox School District No. 122*, 917 F.2d 1004 (7th Cir. 1990), that public-school teachers must hew to the approach prescribed by principals (and others higher up in the chain of authority). Ray Webster wanted to teach his social-studies class that the world is much younger than the four-billion-year age given in the textbook the class was using; he proposed that the pupils consider the possibility of divine creation as an alternative to the scientific understanding. We held that Webster did not have a constitutional right to introduce his own views on the subject but must stick to the prescribed curriculum—not only the prescribed subject matter, but also the prescribed perspective on that subject matter. Following *Palmer v. Board of Education*, 603 F.2d 1271 (7th Cir. 1979), we held in *Webster* that "those authorities charged by state law with curriculum development [may] require the obedience of subordinate employees, including the classroom teacher." 917 F.2d at 1007. See also *Boring v. Buncombe County Board of Education*, 136 F.3d 364 (4th Cir. 1998).

This is so in part because the school system does not "regulate" teachers' speech as much as it *hires* that speech. Expression is a teacher's stock in trade, the commodity she sells to her employer in exchange for a salary. A teacher hired to lead a social-studies class can't use it as a platform for a revisionist perspective that Benedict Arnold wasn't really a traitor, when the approved program calls him one; a high-school teacher hired to explicate *Moby-Dick* in a literature class can't use *Cry, The Beloved Country* instead, even if Paton's book better suits the instructor's style and point of view; a math teacher can't decide that calculus is more important than trigonometry

and decide to let Hipparchus and Ptolemy slide in favor of Newton and Leibniz.

Beyond the fact that teachers hire out their own speech and must provide the service for which employers are willing to pay—which makes this an easier case for the employer than *Garcetti*, where speech was not what the employee was being paid to create—is the fact that the pupils are a captive audience. Education is compulsory, and children must attend public schools unless their parents are willing to incur the cost of private education or the considerable time commitment of home schooling. Children who attend school because they must ought not be subject to teachers' idiosyncratic perspectives. Majority rule about what subjects and viewpoints will be expressed in the classroom has the potential to turn into indoctrination; elected school boards are tempted to support majority positions about religious or patriotic subjects especially. But if indoctrination is likely, the power should be reposed in someone the people can vote out of office, rather than tenured teachers. At least the board's views can be debated openly, and the people may choose to elect persons committed to neutrality on contentious issues. That is the path Monroe County has chosen; Mayer was told that she could teach the controversy about policy toward Iraq, drawing out arguments from all perspectives, as long as she kept her opinions to herself. The Constitution does not entitle teachers to present personal views to captive audiences against the instructions of elected officials. To the extent that *James v. Board of Education*, 461 F.2d 566 (2d Cir. 1972), and *Cockerel v. Shelby County School District*, 270 F.3d 1036, 1052 (6th Cir. 2001), are to the contrary, they are inconsistent with later authority and unpersuasive.

*Piggee* supports the school district rather than Mayer. An instructor at a community college, Piggee had argued that the first amendment allowed her to promote a reli-

gious perspective on homosexuality to students in a cosmetology class. We held, to the contrary, that a college may demand that instructors limit their speech to topics germane to the educational mission. A germaneness rule does not entail balancing under *Pickering*; Piggee could not conduct "just a little" proselytizing on the theory that it did not do "very much" harm to the educational mission. Our remark that *Garcetti* was "not directly relevant" did not reflect doubt about the rule that employers are entitled to control speech from an instructor to a student on college grounds during working hours; it reflected, rather, the fact that Piggee had *not* been hired to buttonhole cosmetology students in the corridors and hand out tracts proclaiming that homosexuality is a mortal sin. The speech to which the student (and the college) objected was not part of Piggee's teaching duties. By contrast, Mayer's current-events lesson was part of her assigned tasks in the classroom; *Garcetti* applies directly.

How much room is left for constitutional protection of scholarly viewpoints in post-secondary education was left open in *Garcetti* and *Piggee* and need not be resolved today. Nor need we consider what rules apply to publications (scholarly or otherwise) by primary and secondary school teachers or the statements they make outside of class. See *Vukadinovich v. North Newton School Corp.*, 278 F.3d 693 (7th Cir. 2002). It is enough to hold that the first amendment does not entitle primary and secondary teachers, when conducting the education of captive audiences, to cover topics, or advocate viewpoints, that depart from the curriculum adopted by the school system.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*