Randi **WEINGARTEN,**
**et al., Plaintiffs,**

**v.**

**BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NEW YORK, et al., Defendants.**

**No. 08 Civ. 8702(LAK).**

United States District Court,
S.D. New York.

Jan. 22, 2010.

Alan M. Klinger, Dina Kolker, Stroock & Stroock and & Lavan LLP, Norman Siegel, Attorneys for Plaintiffs.

Paul Marks, Michael A. Cardozo, Corporation Counsel of the City of New York, Attorneys for Defendants.

## MEMORANDUM OPINION

LEWIS A. KAPLAN, District Judge.

Plaintiffs, the president of the United Federation of Teachers ("UFT") and three New York City public school teachers, claim that the New York City school chancellor's regulation barring teachers from wearing political campaign buttons in Board of Education ("BOE") buildings violates their rights under the First Amendment and the New York State Constitution. The matter is before the Court on cross motions for summary judgment. The Court assumes familiarity with its previous opinion on plaintiffs' motion for a preliminary injunction.[1]

*Facts*

*The Regulation*

The New York City school chancellor promulgated Regulation D–130 ("the Regulation"), which has been in effect since at least 2004.[2] Section C.1 of the Regulation provides that, "[w]hile on duty or in contact with students, all school personnel should maintain a posture of complete neutrality with respect to all candidates."[3] Section B.3.a., entitled "Use of School Facilities and Equipment," provides:

"No material supporting any candidate, candidates, slate of candidates, or political organizations/committees may be dis-

tributed, posted, or displayed in any school building.

"a. Except as an integral part of regularly published staff newspapers or newsletters, materials advocating the election of a candidate or slate of candidates may not be placed in staff mailboxes in schools or district or central headquarters officers. However, in no event shall regularly published staff newspapers or newsletters contain endorsements of community school board candidates. Inserts for the purposes of campaigning may not be included in regular publications placed in staff mailboxes in schools and district and central offices."[4]

In late September 2008, Michael Best, general counsel for the chancellor, informed the UFT that the Regulation prohibited teachers from wearing campaign buttons and distributing campaign materials. On October 1, 2008, the BOE advised that teachers must comply with the Regulation "in light of the upcoming presidential election" and called specific attention to Sections B.3.a. and C.1.[5]

*This Action*

Plaintiffs claim that the Regulation violates their First Amendment rights by prohibiting teachers from (1) wearing political campaign buttons in BOE buildings, (2) posting candidate political materials on bulletin boards designated for union use in BOE buildings, and (3) placing candidate-related political materials in staff mailboxes in BOE buildings. They maintain also that the BOE's position has deterred them

---

1. *See Weingarten v. Bd. of Educ. of City Sch. Dist.,* 591 F.Supp.2d 511 (S.D.N.Y.2008).

2. Pl. 56.1 St. [DI 47] ¶ 9.

3. *Id.* ¶ 11.

4. *Id.* ¶ 10.

5. *See* Cpt. Ex. B.

from wearing political buttons and displaying and distributing campaign materials.

The Court is not writing on a clean slate. It previously granted in part and denied in part plaintiffs' motion for a preliminary injunction. It enjoined defendants, pending the determination of this action, from enforcing the Regulation to the extent that it prohibits (1) posting materials containing candidate-related political content on UFT bulletin boards located in areas closed to students and (2) placing materials containing candidate-related political content in staff mailboxes.[6] But it denied so much of plaintiffs' motion as sought to enjoin enforcement of the Regulation insofar as it proscribes the wearing of political buttons by public school teachers while in school because plaintiffs were unlikely to prevail on the merits of that claim. It found a clear relationship between the Regulation's ban of political buttons and defendants' legitimate pedagogical interests in avoiding (1) the inevitable misperceptions among a minority of students that the views reflected by a teacher's political button are endorsed by the school district and (2) the entanglement of their public educational mission with partisan politics. The Court assumes familiarity with its discussion in that opinion of the law governing the right to wear political campaign buttons in the classroom.[7]

*The Revised Regulation*

In light of the Court's opinion, defendants on June 22, 2009 revised section B of the Regulation as follows:

> "Staff mailboxes and union bulletin boards in schools and district and central headquarters are to be used for the following purposes only: (1) by schools and district offices for the dissemination of education-related materials and other school-related information; and (2) by the union for the dissemination of union-related materials. Toward that end, the union may:

> "a. Place materials advocating the election of a candidate, candidates, slate of candidates or political organization/committee in staff mailboxes.

> "b. Post materials advocating the election of a candidate, candidates, slate of candidates or political organization/committee on union bulletin boards in areas closed to students."[8]

Defendants revised also Section C of the Regulation as follows: "While on duty or in contact with students, all school personnel shall maintain a posture of complete neutrality with respect to all candidates. Accordingly, while on duty or in contact with students, school personnel may not wear buttons, pins, articles of clothing, or any other items advocating a candidate, candidates, slate of candidates or political organization/committee."[9]

In support of the amended regulation, New York City School Chancellor Joel Klein stated that "[d]isplays of political partisanship by teachers in the schools, particularly in the classroom to a captive audience of students, are inconsistent with our educational mission. When teachers wear political paraphernalia in schools, they may improperly influence children and impinge on the rights of students to learn in an environment free of partisan political influence." Furthermore, "[p]artisan political activity by staff in the presence of students ... sends the message

---

6. *See Weingarten,* 591 F.Supp.2d at 522.

7. *See id.* at 515–20.

8. Pl. 56.1 St. ¶ 12.

9. *Id.* ¶ 13.

that the view expressed carries the support of the school system." [10]

*The Motions*

Plaintiffs nevertheless have engaged in extensive discovery to buttress their claim that the Regulation's political button ban is unconstitutional. In particular, they challenge defendants' theory that students erroneously might attribute the political expression inherent in a teacher's campaign button to the school system. In addition, they retained David Moshman, a professor of educational psychology at the University of Nebraska, to "discuss the capacity of adolescents, specifically high school age students, to understand the nature of free speech, to distinguish between personal speech and official speech representing the curriculum viewpoint of the school." [11]

Before proceeding to Professor Moshman's views, it is important to note the form in and basis on which they have been submitted here. Professor Moshman prepared an unsworn report and testified at a deposition. The report and deposition excerpts were placed before the Court initially by defendants, albeit subject to the reservation of their right to challenge the admissibility of his views under Federal Rule of Evidence 702.[12] As the Court understands defendants' position, then, it is this: they place Professor Moshman's views before the Court and then seek to demonstrate that his views would not defeat their motion for summary judgment even if they were admissible in evidence. But they reserve their contention that they are not admissible under Rule 702, a matter to which the Court will return below.

With that caveat, the Court turns to the substance of Professor Moshman's comments.

Professor Moshman opined that elementary school students—those in kindergarten through fifth grade—"may fail to distinguish speech that happens to occur on school premises from official school views and teachings and may be unable to fully comprehend explanations without distinction." In consequence, banning teachers from wearing campaign buttons in elementary schools would be "reasonable." [13]

Professor Moshman opined also that middle school students—those in sixth through eighth grade—have the competency that high school students do, but not necessarily well consolidated, and one can't count on it quite clearly." [14] Should a middle school student misapprehend that a teacher's political button is endorsed by the school, the teacher need only provide a "simple explanation" that "people have a right to free speech, including a right to express their political views, and that's what I'm doing." [15]

On the other hand, Professor Moshman opined that "[f]ew, if any" high school students—those in ninth through twelfth grade—"would mistakenly believe that a campaign button worn by teachers constituted official school-related speech." [16] High school students instead "spontaneously understand that a teacher's button is not part of the curriculum." [17] Professor Moshman thus concluded that a high school teacher's "mandated explanation" would not be "necessary" because Profes-

10. *Id.* ¶ 14.

11. Pl.Ex. D, Moshman Report ¶ 3.

12. Def. 56.1 St. at 6 n. 1.

13. Pl.Ex. E, Moshman Dep. 23.

14. *Id.* at 26.

15. *Id.* at 30; Moshman Report ¶ 11.

16. Moshman Dep. 22; Moshman Report ¶ 11.

17. Moshman Dep. 27.

sor Moshman "would think that students would understand that people are free to express their views." [18] Instead, "in a specific case, a teacher might decide it would be a good idea to say something about it." [19]

Defendants now move for summary judgment dismissing plaintiffs' claim that the Regulation's political button ban violates their First Amendment rights. They argue that plaintiffs have failed to raise a material issue of fact as to whether defendants' button ban is not reasonably related to their legitimate interests in avoiding (1) misperceptions among students that the political expression inherent in a teacher's button is endorsed by the school district and (2) the entanglement of their educational mission with partisan politics. Plaintiffs cross move for partial summary judgment on the same claim. Their cross motion rests on the factual assertion that high school students would understand that the views expressed by teacher-worn political buttons are personal rather than institutional. [20]

### Discussion

#### Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. [21] Where the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. [22] In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment. [23]

#### Political Buttons

Plaintiffs rely on Professor Moshman's opinion that high school students would "spontaneously understand that a teacher's button is not part of the curriculum." [24] They argue that the Court should "find as a matter of law that the reasonable high school student would not perceive a candidate button as school-endorsed." [25]

■ Plaintiffs' contentions are without merit. The constitutionality of the Regulation does not, as plaintiffs argue, turn on "whether a reasonable person would associate the symbol or speech at issue with government sponsorship." [26] Instead, *Hazelwood School District v. Kuhl-*

---

18. *Id.* at 32; Def. Opp. Br. at 9 (citing Moshman Dep. 27–28).

19. Moshman Dep. 32.

20. The parties do not address plaintiffs' claims that the original Regulation was unconstitutional insofar as it prohibited (1) posting candidate political materials on bulletin boards designated for union use in BOE buildings and (2) placing candidate-related political materials in staff mailboxes in BOE buildings.

21. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Eng'g Corp.,* 221 F.3d 293, 300 (2d Cir.2000); *see also* Fed.R.Civ.P. 56(c).

22. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Virgin At. Airways Ltd. v. British Airways PLC,* 257 F.3d 256, 273 (2d Cir.2001).

23. *See, e.g., Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 123–24 (2d Cir.2001); *Raskin v. Wyatt Co.,* 125 F.3d 55, 65–66 (2d Cir.1997).

24. Moshman Dep. 27.

25. Pl. Opp. Br. at 29–30.

26. *Id.* at 29.

*meier*[27] and its progeny demonstrate that the governing boards of public schools are constitutionally permitted, within reason, to regulate the speech of teachers in the classroom for legitimate pedagogical reasons.[28] The Regulation therefore is constitutional so long as defendants acted in good faith and reasonably could have regarded the button ban as furthering their legitimate pedagogical concerns.[29]

As an initial matter, plaintiffs now concede that the Regulation as applied in elementary and middle schools serves a legitimate pedagogical purpose. Professor Moshman, assuming for the moment the admissibility of his view, opined that elementary school students "may fail to distinguish speech that happens to occur on school premises from official school views and teachings and may be unable to fully comprehend explanations about the distinction." He therefore concluded that banning teachers from wearing campaign buttons in elementary schools would be "reasonable."[30] And he added that middle school students "have the competency that high school students do, but not necessarily well consolidated and one can't count on it quite clearly." Thus a teacher can correct any confusion among middle school students with a "simple explanation."[31]

Professor Moshman takes issue with the Regulation with regard to high schools. He states that "[f]ew, if any" high school students "would mistakenly believe that a campaign button worn by teachers constituted official school-related speech" because they would "spontaneously understand that a teacher's button is not part of the curriculum." Thus a high school teacher's "mandated explanation" would not be "necessary," though "in a specific case, a teacher might decide it would be a good idea to say something about it."[32]

The first problem with the plaintiffs' reliance on Professor Moshman to raise an issue with respect to high schools is that his opinion, even if it were admissible and fully supported plaintiffs' argument from a factual standpoint, would be immaterial. *Hazelwood* and its progeny establish that a school board's determination that opinions conveyed by teacher-worn political buttons might reasonably be perceived to bear the school's imprimatur or otherwise interfere with the defendants' public mission is entitled to a degree of deference because it is expert in these matters.[33] Thus, defendants are not required to provide an empirical basis for their determination, at least in the absence of some substantial basis to question it.

---

27. 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988).

28. *See id.* at 270–73, 108 S.Ct. at 569–71 ("[T]he evidence relied upon by the Court of Appeals fails to demonstrate the 'clear intent to create a public forum'.... Accordingly, school officials were entitled to regulate the contents of [a student newspaper] in any reasonable manner."); *Mayer v. Monroe Cmty. Sch. Corp.*, 474 F.3d 477, 479–80 (7th Cir. 2007); *Cal. Teachers Ass'n v. Governing Bd. of San Diego Unified Sch. Dist.*, 45 Cal.App.4th 1383, 53 Cal.Rptr.2d 474, 478–80 (1996).

29. *See Weingarten*, 591 F.Supp.2d at 519–20.

30. Moshman Dep. 23.

31. *Id.* at 30; Moshman Report ¶ 11.

32. Moshman Dep. 32; Def. Opp. Br. at 9 (citing Moshman Dep. 27–28).

33. *Hazelwood*, 484 U.S. at 267, 108 S.Ct. at 562 ("The determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school board rather than with the federal courts.") (quoting *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 683, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986)).

 Neither Professor Moshman's report nor his testimony provides such a basis. While he professes to believe that "[f]ew, if any" high school students would fail to understand that political views espoused on buttons worn by teachers would not represent the views of the school, he thereby acknowledges that at least some would be misled on that point and to that extent concedes that the defendants' determination is well grounded in some degree. Moreover, there is nothing in Professor Moshman's report or testimony to suggest that he has any reliable basis for concluding that only a small and insignificant number of high school students would be misled.[34] To that extent, his opinion fails to meet the requirements of Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals.*[35] This requires its rejection in light of the requirement that courts consider only admissible evidence in resolving motions for summary judgment. In consequence, the state of the record with respect to high school students is the defendants' determination to which due deference is owed and an absence of admissible evidence to the contrary.[36] Plaintiffs have failed to raise a genuine issue of fact that the Regulation's ban of teacher-worn political buttons in high schools is not reasonably related to defendants' legitimate pedagogical concerns.

Moreover, there is an entirely independent basis for upholding this aspect of the Regulation. Defendants have concluded that "[d]isplays of political partisanship by teachers in the schools, particularly in the classroom to a captive audience of students, are inconsistent with our educational mission. When teachers wear political paraphernalia in schools, they may improperly influence children and impinge on the rights of students to learn in an environment free of partisan political influence." [37] Plaintiffs, however, have not addressed or challenged the reasonableness of this basis for the Regulation.[38] Yet defendants' wish to maintain neutrality on controversial is-

---

**34.** Professor Moshman has demonstrated neither that his testimony is "based on sufficient facts or data" nor that his opinion is the "product of reliable principles and methods" as required by Rule 702. Although he summarizes academic studies in his report, he has not explained how those studies apply to the facts here at issue or established that his methodology is reliable or acceptable.

**35.** 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

**36.** Plaintiffs claim that a flyer entitled "Mike Bloomberg NYC" and allegedly posted on BOE bulletin boards is evidence that "BOE was apparently not complying with its own proffered policy of neutrality as to political candidates." Pl. Opp. Br. at 17. Assuming *arguendo* that flyer is at all relevant to the present inquiry, it appears to advertise a student job for "Bloomberg for Mayor 2009" rather than promote "Mayor Bloomberg for reelection." Pl. Reply Br. at 13. Beneath the heading "Job Description," the flyer states,

"Qualified students will participate in our voter outreach program. They will have one-on-one contact with voters on a daily basis and will learn about neighborhood issues, voter interaction, and campaign strategy." Pl. Decl. [DI 51] Ex. 1.

**37.** Pl. 56.1 St. ¶ 14.

**38.** Professor Moshman's opinion that "there is no reason to expect an adolescent to adopt a political view simply because it is the view of a teacher" and that a teacher's wearing a political button does not "constitute indoctrination" is unsubstantiated and insufficient to raise a material issue of fact. Def. Ex. D, at 10. In addition, Plaintiffs' assertion that "[o]ne of the State-recommended ways to teach [civic] principles is to have students 'participate as informed citizens in the political justice system and processes of the United States, including voting" is immaterial here because it does not concern "displays of political partisanship by teachers' in schools." Pl. 56.1 St. ¶ P.

sues is a legitimate pedagogical concern.[39]

In sum, plaintiffs have offered no admissible evidence to undermine or place in doubt the deference due to defendants' conclusion that there is an appropriate relationship between the Regulation and defendants' legitimate interests in avoiding inevitable perceptions on the part of a minority and, perhaps even more important, in avoiding the entanglement of their public educational mission with partisan politics.[40] For reasons previously stated,[41] the Regulation reflects a good faith professional judgment by defendants about the effect of teachers' political campaign buttons in public schools. It is not a covert attempt to favor one viewpoint over another. That is all *Hazelwood* and its progeny require in these circumstances.

In consequence, defendants have failed satisfy their burden of raising a genuine issue of material fact that defendants' button ban is not reasonably related to their legitimate pedagogical concerns.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment [DI 36] is granted to the extent that plaintiffs' claim that the Regulation's political button ban violates the First Amendment is dismissed. As the parties have not addressed plaintiffs' other claims, defendants' motion is denied in all other respects. Plaintiffs' motion for summary judgment [DI 43] is denied.

SO ORDERED.

---

**39.** *Mayer,* 474 F.3d at 479–80; *Cal. Teachers,* 53 Cal.Rptr.2d at 478–80.

**40.** *Weingarten,* 591 F.Supp.2d at 520.

